In re the marriage of:

Sally A. Lyman,
Petitioner-Respondent-Cross-Appellant,

v.

H. Scot Lyman,
Respondent-Appellant-Cross-Respondent.

Court of Appeals

*No. 2010AP470. Submitted on briefs November 11, 2010.
—Decided January 19, 2011.*

2011 WI App 24

(Also reported in 795 N.W.2d 475.)

650

On behalf of the respondent-appellant-cross-respondent, the cause was submitted on the briefs of *Bruce C. O'Neill* and *Diane Slomowitz* of *Fox, O'Neill & Shannon, S.C.*, Milwaukee.

On behalf of the petitioner-respondent-cross-appellant, the cause was submitted on the briefs of *Thomas A. Merkle* and *Gregory S. Mager* of *O'Neill, Cannon, Hollman, DeJong & Laing, S.C.*, Milwaukee.

Before Brown, C.J., Anderson and Reilly, JJ.

¶ 1. REILLY, J. This case presents the economic realities of divorce and its relationship to children and the law. While a divorce terminates the relationship of a husband and wife, it does not terminate the parental relations and obligations of parents to their children. After H. Scot Lyman and Sally A. Lyman divorced, Scot received a multi-million dollar settlement as a result of a wrongful termination of employment lawsuit. The lawsuit took three and one-half years, and by the time it settled the Lymans' older son had turned eighteen

and graduated from high school and their younger son was seven months from his eighteenth birthday. Scot argues that the settlement is not income and therefore is not subject to a child support award. He also argues that the circuit court improperly ignored a previous order limiting Scot's child support payments to $6250 per month. Finally, Scot argues that as their sons are both now adults, any award of child support should be placed in trust for their sons rather than going to Sally.

¶ 2. Sally cross-appeals arguing that the circuit court erred in failing to order interest on the child support award and that the court failed to correctly compute the amount of child support. We affirm the circuit court's order in all respects.

## FACTUAL BACKGROUND

¶ 3. The Lymans were divorced on November 3, 1994, after a seven-year marriage. Sally was awarded primary placement of their two minor sons, and Scot's family support payment obligation was agreed upon. Following the conclusion of Scot's family support payments, the parties stipulated to a child support order commencing on January 1, 1999, in the amount of 25% of Scot's gross employment income up to $185,000, and 5% of his gross employment income in excess of $185,000, to be paid into trusts for the children with a yearly contribution cap of $9500 per trust.

¶ 4. In 2002, Scot entered into a ten-year contract with St. Jude Medical, S.C. to serve as a product sales representative. Scot was guaranteed commission payments of at least $725,000 per year for the first four years of the contract. Sally moved to modify their child support agreement in 2004. The family court commissioner relied on the high income payor formula and

increased Sally's child support award to $10,275 per month. In January of 2005, the circuit court reduced child support to $6250 per month after finding the court commissioner's award to be excessive and detrimental to the children under *Ayres v. Ayres*, 230 Wis. 2d 431, 602 N.W.2d 132 (1999).

¶ 5. Shortly after the circuit court's decision, Scot's employment with St. Jude Medical was terminated. Scot sued St. Jude Medical for breach of contract. Scot also filed a motion in family court to modify his child support obligation due to his job loss. In February of 2006, the Lymans stipulated that Scot would pay Sally child support in the amount of 25% of his monthly income up to $6999, 20% of his monthly income between $7000 and $12,499, and 15% of his monthly income over $12,500.

¶ 6. In June of 2007, the Lymans' older son turned eighteen and graduated from high school. In August of 2007, the Lymans amended Scot's child support obligations to reflect his support of one child. The amended stipulation reduced Scot's child support payments to 17% of his monthly income up to $6999, 14% of his monthly income between $7000 and $12,499, and 10% of his monthly income over $12,499.

¶ 7. In April of 2008, the Lymans' younger son switched high schools and for a period of time lived with Scot. Scot filed a motion seeking an award of primary physical placement and termination of child support. Sally objected, and moved to increase Scot's child support payments based upon Scot's anticipated settlement of his lawsuit against St. Jude Medical.

¶ 8. On June 23, 2008, Scot settled his lawsuit against St. Jude Medical for a gross sum of $3,490,000. Scot reported all of the settlement as income on his 2008 tax returns. Scot spent $1,180,000 in attorney fees during the lawsuit.

¶ 9. In September of 2008, the Lymans stipulated to shared placement of their younger son, with the amount of Scot's child support payments remaining at the same levels that were agreed to in the Lymans' 2007 stipulation and order. The impact of the wrongful termination settlement on child support was agreed to be resolved at a later hearing. In January of 2009, Scot's child support obligations were terminated as the younger son turned eighteen and completed all of his requirements for high school graduation.

¶ 10. On December 14, 2009, the circuit court held an evidentiary hearing on Sally's motion for child support from the settlement amount. The court found that the children were deprived of the income that Scot would have otherwise earned because of his wrongful termination. The court further found that the settlement was unallocated and all of the $3,490,000 was ordinary or capital gain income.

¶ 11. The circuit court concluded that the entire settlement amount was considered income for child support purposes and was thus subject to the terms of the Lymans' 2007 child support stipulation that was in place in June of 2008. After deducting the costs incurred by Scot to obtain the settlement, the court computed that $2.2 million of the settlement was subject to child support. As the stipulation stated that Scot had to pay 10% of any monthly income over $12,499, the court awarded Sally $220,000. The court did not order any interest on the award as it found that the settlement amount was not a liquidated sum nor had the court previously ordered any amount from the settlement funds.

## STANDARD OF REVIEW

¶ 12. Child support determinations are within the circuit court's discretion and will not be reversed absent an erroneous exercise of discretion. *Welter v. Welter*, 2006 WI App 54, ¶ 4, 289 Wis. 2d 857, 860, 711 N.W.2d 705. A circuit court's discretionary decision is not erroneous if it relied on facts or inferences from the record and its conclusion was based on proper legal standards. *See Maritato v. Maritato*, 2004 WI App 138, ¶ 8, 275 Wis. 2d 252, 685 N.W.2d 379. If the circuit court properly exercised its discretion, we must uphold the court's decision even if we would have reached a different result. *See Johnson v. Johnson*, 225 Wis. 2d 513, 516, 593 N.W.2d 827 (Ct. App. 1999).

## DISCUSSION

### *All Income is Presumed to be Subject to Child Support Obligations*

■

¶ 13. Scot argues that a presumption exists that any sums contained in an unallocated settlement are not income for child support purposes. As his settlement with St. Jude Medical was unallocated, he argues that the settlement funds are not "gross income" for purposes of child support. We disagree and conclude that all income is presumed to be available to meet a parent's obligation to his or her child.

■■

¶ 14. Parents have a duty to support their children. *Rottscheit v. Dumler*, 2003 WI 62, ¶ 31, 262 Wis. 2d 292, 664 N.W.2d 525. Child support payments are designed to maintain the children's standard of

living at the economic level they would have enjoyed had there been no divorce. *Sommer v. Sommer*, 108 Wis. 2d 586, 589–90, 323 N.W.2d 144 (Ct. App. 1982). The starting point for setting child support payments is the use of the percentage standards set by the Department of Children and Families. *See* Wis. Admin. Code § DCF 150, "Preface," (Nov. 2009). A court may grant a deviation from the standards if it finds that the standards are unfair to the child or any party. *Ayres*, 230 Wis. 2d at 443. In their 2007 stipulation, the Lymans agreed to the high income payor formula set forth in Wis. Admin. Code § DCF 150.04(5).

¶ 15. Scot cites to *Krebs v. Krebs*, 148 Wis. 2d 51, 435 N.W.2d 240 (1989), and *Weberg v. Weberg*, 158 Wis. 2d 540, 463 N.W.2d 382 (Ct. App. 1990), as support for his argument that a presumption exists in child support cases that an unallocated settlement is presumed to be property not subject to child support. Scot's reliance upon *Krebs* and *Weberg* is misplaced as both are maintenance cases dealing with the financial relationship between former spouses. Maintenance determinations look to the principles of fairness and support between former spouses. *See Rohde-Giovanni v. Baumgart*, 2004 WI 27, ¶ 29, 269 Wis. 2d 598, 676 N.W.2d 452 (2004). In contrast, child support is an obligation that parents owe to their children. Neither *Krebs* nor *Weberg* is applicable.

¶ 16. Scot also argues that because his settlement included "an unallocated portion for the loss of a contractual right to sell his company," the settlement is not income under Wis. Admin. Code § DCF 150.02(13). Scot offered no expert testimony as to what this amount is, or how "the loss of a contractual right to sell his

company" is not the same as a replacement of the loss of income he suffered as a result of his wrongful termination. Scot has the burden of proof as to what amounts would not fall within "gross income." *See Szymczak v. Terrace at St. Francis*, 2006 WI App 3, ¶ 24, 289 Wis. 2d 110, 709 N.W.2d 103 (Ct. App. 2005) ("[T]he party who asserts the affirmative of a proposition has the burden of proof."). Scot's burden was to prove what amount of the settlement was not "gross income" rather than attempting to place the burden upon the court to decipher an amount that equaled the "loss of a contractual right to sell his company."

¶ 17. On his tax returns, Scot reported the entire settlement amount as ordinary or capital gain income. Scot offered no expert testimony as to any amount of the settlement that would fall outside of "gross income." Scott admitted that no allocation was made for future loss of income. Scot's inability to "allocate" through credible testimony what amounts, if any, fall outside the definition of "gross income" is a failure of Scot to meet his burden of proof. Given the record presented to the circuit court, we affirm that the entire settlement falls within the category of "gross income."

*The Circuit Court Applied*
*the Proper Child Support Stipulation*

¶ 18. Child support determinations are to be made by applying percentage standards to a payor's gross income. *See Doerr v. Doerr*, 189 Wis. 2d 112, 128, 525 N.W.2d 745 (Ct. App. 1994). Scot challenges the circuit court's use of the Lymans' 2007 stipulation, which stated that child support would be determined by utilization of the high income payor formula set forth in

Wis. Admin. Code § DCF 150.04(5). The burden of proof rests with the party challenging the application of child support percentage standards. *See Luciani v. Montemurro-Luciani*, 199 Wis. 2d 280, 295–96, 544 N.W.2d 561 (1996). Scot makes two arguments. First, Scot argues that the circuit court erred by not incorporating its 2005 order, which held that child support payments of more than $6250 per month would be excessive and detrimental to the Lyman children and would constitute hidden maintenance to Sally. Alternatively, Scot argues that even if the 2007 stipulation is controlling, the circuit court should have exercised its discretion and held that the use of the percentage standards found in the 2007 stipulation would be unfair to the child and Scot.

¶ 19. Scot's claim that the circuit court needed to incorporate its 2005 order limiting child support to $6250 per month is without merit as a court may always modify child support upon a showing of a substantial change in circumstances. *See* Wis. Stat. § 767.59(1f) (2007–08).[1] There is no dispute that following the court's 2005 order there were substantially changed circumstances: Scot was terminated from St. Jude Medical and the Lymans' oldest son turned eighteen and graduated from high school. The 2006 stipulation came about because of Scot's job loss and the impetus for the 2007 stipulation was the older son's graduation from high school. Scot consented to both of these stipulations; he cannot cry foul now that they are inconvenient for him. Furthermore, the 2006 and 2007 stipulations both modified the 2005 order. In the 2006

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

stipulation Scot agreed to pay 15% of his monthly income over $12,500, and in the 2007 stipulation he agreed to pay 10% of his monthly income over $12,499. Neither of those stipulations set a monthly limit of $6250. The 2005 order is not controlling.

¶ 20. Scot likewise failed in his burden to show that application of the high income payor formula would not be in his children's best interests or would do injustice to the children or Scot. *See Luciani*, 199 Wis. 2d at 295–96. As previously mentioned, Scot stipulated to utilizing the high income payor formula following the court's 2005 order. In 2007, Scot moved to modify child support and requested the court utilize the high income payor formula. Sally consented, and the circuit court approved the Lymans' stipulation. In 2008, the Lymans again stipulated to utilizing the child support formula agreed to in 2007 and the circuit court again approved their stipulation.

¶ 21. While the circuit court acknowledged that it may have come to a different result if not for the 2007 stipulation, the court did not err by applying the terms of the stipulation.

*The Circuit Court Appropriately Declined to Deduct the Taxes Scot Paid on the Settlement*

¶ 22. After the circuit court held that Scot's settlement was income subject to child support, it reduced the settlement amount by deducting roughly $1.2 million that Scot incurred in attorney fees, interest, and penalty expenses. Scot argues that the settlement amount should have been reduced by an additional $778,284 that Scot paid in taxes on the settlement. We reject Scot's request.

¶ 23. Child support is calculated by using the payor's gross income, not net income. *See* Wis. Admin. Code §§ DCF 150.02(13), 150.02(21), 150.03(1), and 150.03(2); *see also Abitz v. Abitz,* 155 Wis. 2d 161, 180, 455 N.W.2d 609 (1990). We concur with the circuit court's determination as to the amounts deducted from Scot's settlement, as well as the court's decision not to deduct the taxes Scot paid on the settlement. The attorney fees and costs were reasonable expenditures that Scot necessarily incurred to obtain his settlement. In contrast, the state and federal income taxes are treated the same as if they had been imposed on Scot's annual employment income. And as we previously stated, child support is determined based upon the payor's gross income rather than net after-tax income. *See id.* The circuit court appropriately did not deduct taxes paid on Scot's settlement from the amount subject to child support.

### *Request to Place Child Support in a Trust*

¶ 24. Scot requested that the circuit court place any award of child support into a trust for his sons. The circuit court declined, and awarded the child support directly to Sally. Scot argues that a trust is needed because Sally will not use the settlement money to support their sons or help fund their education.

¶ 25. The imposition of a trust on child support is a matter within the circuit court's discretion. *Winkler v. Winkler,* 2005 WI App 100, ¶ 31, 282 Wis. 2d 746, 699 N.W.2d 652. The authority of a court to impose a trust on child support is limited. *See id.* When a non-custodial parent seeks to impose a trust on child sup-

port arrearages he or she must demonstrate by substantial evidence that the trust is in the best interests of the child. *Cameron v. Cameron*, 209 Wis. 2d 88, 105, 562 N.W.2d 126 (1997). When the primary custodian does not consent to the trust, a factual finding must be made as to whether the primary custodian was incapable or unwilling to wisely manage the child support money. *Id.* at 106.

¶ 26. Scot did not show that Sally is incapable or unwilling to wisely manage the money. We recognize that the Lymans' sons are now adults and that *Cameron* did not address the issue of whether child support can be awarded retroactively after the children have become adults. Scot's settlement was replacement income for the time when his child support obligations were in force. We find no error in the circuit court denying the creation of a trust.

## *Cross-Appeal*

¶ 27. Sally cross-appeals arguing that the circuit court erred in failing to order interest on the child support award and that the court failed to correctly compute the amount of child support based upon the settlement received by Scot. We affirm the circuit court's holding on both issues.

¶ 28. We agree with the circuit court that no interest is due on the settlement proceeds. The court concluded that the settlement funds were neither a liquidated amount nor an amount ordered by the court. While the child support award was an obligation of Scot's based upon the settlement and the 2007 stipulation, it

was not an arrearage under WIS. STAT. § 767.511(6). We defer to the circuit court's discretionary decision declining interest.

■■ ■■

¶ 29. We also reject Sally's request that the court set off the expenses incurred by Scot to their "actual, tax-effected cost to Scot." Child support is calculated using the payor's gross income; the tax effects are irrelevant. Moreover, Sally does not provide the court with evidence of the "actual, tax-effected cost to Scot," but rather asks that we accept her assumptions about what the tax impact may be on the expenses Scot incurred. We decline to make any assumptions as the question is irrelevant.

## CONCLUSION

¶ 30. We hold that Scot's unallocated settlement is considered income for child support purposes and that it is subject to the terms of the Lymans' 2007 child support stipulation. We affirm the circuit court's application of the 2007 stipulation and award of $220,000 in child support.

¶ 31. No costs to either party.

*By the Court.*—Order affirmed.