BLANCHARD, J.
¶ 1 Craig Fieschko appeals the circuit court's denial of his motion to modify his child support obligations to reduce support payments for the two minor children he shares with his ex-spouse, Geraldine Veneman. Fieschko challenges the court's determination that large increases in his income, resulting in larger support payments under the pertinent percentage guidelines, did not create a substantial change in circumstances as is required for modification under WIS. STAT . § 767.59(1f) (2015-16).[1]
¶ 2 Fieschko argues that the circuit court erred in determining that the parties foresaw at the time of the divorce that his income would increase to the degree that it did, creating the corresponding increases in child support payments. He further argues that the court confused the standards governing the modification of child support under WIS. STAT . § 767.59(1f) with the standards used to determine whether to deviate from default guideline levels for child support obligations under WIS. STAT . § 767.511(1m) in a manner that unfairly prejudiced him. We conclude that Fieschko failed to carry his burden of demonstrating to the circuit court that the income increases were not foreseeable or otherwise erred in a manner undermining that determination.
¶ 3 Fieschko also appeals the court's denial of his alternative request for relief, which was to place a portion of child support payments that he deems excessive into trusts for the children under WIS. STAT . § 767.511(2). We conclude that Fieschko fails to meet his burden of showing that the court erroneously exercised its discretion in declining to place any portion of Fieschko's child support payments into trusts for the benefit of the children. Fieschko fails to show that the court clearly erred in declining to find that Veneman was incapable or unwilling to wisely manage the child support money for the benefit of the children. See Lyman v. Lyman , 2011 WI App 24, ¶25, 331 Wis. 2d 650, 795 N.W.2d 475 (requiring findings that payee is not willing and capable before a circuit court can impose the use of a trust for child support payments over payee's objection).
¶ 4 Accordingly, we affirm.
BACKGROUND
¶ 5 The following facts are undisputed. In January 2014, the circuit court entered a judgment of divorce, which incorporated a marital settlement agreement of the parties. The parties have three children. At the time of the divorce the two youngest were aged 7 and 12, and both remain minors at this time.
¶ 6 The settlement agreement required shared physical placement of the children, with Veneman having placement for a majority of overnights. It also included waivers of maintenance by both parties. It required Fieschko to pay child support based on percentage guidelines for high income earners as outlined under WIS. ADMIN CODE § DCF 150.04(5) (Nov. 2009).
¶ 7 Notably, the agreement recognized that "neither party can accurately foresee the amount of future child support under this reconciliation" "[b]ecause of [Fieschko's] fluctuating income" as an attorney. In part to address these anticipated fluctuations, the settlement agreement included a "true up" provision, under which Fieschko would periodically make payments, in addition to regular child support, based on guideline percentages of sources of Fieschko's income that the parties anticipated would fluctuate over time, such as bonuses and draws.
¶ 8 In October 2014, the parties stipulated to modify child support, reducing it to reflect the fact that the parties' eldest child had reached the age of majority. Fieschko continued to pay child support for the parties' younger two children based on the percentage standard contemplated in the settlement agreement.
¶ 9 Fieschko's total annual income, including bonuses and draws, increased as follows: from 2014 to 2015, $ 443,407 to $ 678,428; from 2015 to 2016, $ 678,428 to $ 723,357. Using the high earner percentage guidelines, this resulted in increasing annual child support obligations: $ 44,814.12 in 2014; $ 80,942.19 in 2015; and $ 88,560.54 in 2016.
¶ 10 The focus of this appeal is a motion to modify child support that Fieschko filed in November 2016. He alleged that Veneman was "depositing significant amounts of the child support payments in her own personal retirement [and] investment accounts for her own personal benefit."
¶ 11 The court commissioner denied Fieschko's motion. Fieschko sought de novo review in the circuit court. From that point on, Fieschko's motion to modify child support included two requests for relief: a downward deviation in his guideline support obligation, or, alternatively, placement of portions of child support payments into trusts for each of the two minor children. The parties engaged in discovery, including Fieschko obtaining information about Veneman's income, budget, and spending habits.
¶ 12 At an evidentiary hearing, Fieschko called accountant Dennis Kleinheinz to testify regarding Veneman's financial information. Kleinheinz testified in pertinent part that Fieschko's total 2016 child support payments exceeded Veneman's total 2016 living expenses, including what it cost her to care for the children, by approximately $ 8,600, and that Veneman's savings and other financial accounts increased by more than $ 38,000 during calendar 2016, even after subtracting her 2016 withdrawals and interest accrual. Veneman and Fieschko were the only other witnesses to testify at the hearing. Each testified about his or her respective income and both testified about Veneman's expenses.
¶ 13 As pertinent to this appeal, Fieschko argued that his increased income had escalated his child support payments to such high amounts that Veneman was using a portion of the support payments to benefit herself personally and not for the support of the children. Based primarily on aspects of Kleinheinz' testimony and Veneman's discovery responses, Fieschko argued that Veneman's personal income and savings could not, by themselves, account for increases in her savings and spending on herself, in the form of relative luxuries such as vacations, dining without the children, and jewelry purchases.
¶ 14 Veneman argued that the parties anticipated upward fluctuations in Fieschko's income when they entered the agreement, and that the agreement's application of guideline standards remained fair under the circumstances. She further contended that her failure to spend every dollar of her personal income and the child support she received in a given year was the result of her prudent management of her finances, not because she was receiving more child support than was appropriate.
¶ 15 The court denied Fieschko's motion. The court determined that changes in the parties' circumstances were not substantial.
¶ 16 The court noted that there had been "some change in the parties' financial circumstances" between the time of the stipulated modification of child support in October 2014 and the time Fieschko moved to modify support. (Emphasis in original.) However, the court found that these changes had been foreseeable to the parties at the time of the January 2014 divorce and the October 2014 modification. The court based this finding on the language of the settlement agreement and the history of Fieschko's income fluctuations, which were known to the parties at the time of the divorce.
¶ 17 The court also found that the parties' children were accustomed to an especially high standard of living. The court determined that it was in the children's best interests to preserve the status quo regarding child support. The court noted that, as a general rule, child support payments are ideally set at a level adequate "to maintain the children's standard of living at the economic level they would have enjoyed had there been no divorce." See Lyman , 331 Wis. 2d 650, ¶14.
¶ 18 The court found credible Veneman's testimony that she had consistently used (or, in the case of savings, intended in the future to use) child support payments for the benefit of the children, and that she was using her own funds for personal vacations, dining, entertainment, and luxury items. The court determined that the testimony of Fieschko's expert, Kleinheinz, did not contradict Veneman's testimony because Kleinheinz's testimony failed to undermine her testimony that she was not using her own funds for personal vacations, dining, entertainment, and luxury items.
¶ 19 Turning to the trusts request, the court determined that Fieschko had "not met his burden to demonstrate that certain child support payments should be placed in a trust" because Fieschko had failed to demonstrate, based on "substantial evidence," that the use of such trusts would be in the best interests of the children, and because Veneman was willing to wisely manage, and capable of wisely managing, child support payments. See id. , ¶25.
¶ 20 Fieschko appeals the circuit court's order denying his motion to modify child support or to place a portion of the support into trusts for the benefit of each child.
DISCUSSION
¶ 21 Fieschko challenges the circuit court's order denying his motion to modify child support on the ground that the circuit court "erred in finding that there had been no substantial change in circumstances since the last order affecting support." More specifically, Fieschko argues that the court erred in determining that his increases in income were foreseeable to the parties at the time of the divorce. Fieschko further contends that the court erred by confusing the legal standards for identifying a substantial change in circumstances under WIS. STAT . § 767.59(1f) with the standards under WIS. STAT . § 767.511(1m) used for deviating from guideline support levels in a manner that unfairly prejudiced him.
¶ 22 As we explain further below, we conclude that Fieschko failed to carry his burden of showing a substantial change in circumstances that could merit modification of child support in light of the circuit court's reasonable finding that the parties foresaw the possibility of significant increases in Fieschko's fluctuating income. This includes Fieschko's failure to show how the alleged error by the court involving applicable legal standards should alter our conclusion that the court correctly determined that changes to the parties' circumstances were foreseeable.
¶ 23 We also further explain below why we conclude that Fieschko's request to place "excess" child support payments into trusts under WIS. STAT . § 767.511(2) fails because he has not met his burden to show that the circuit court erroneously exercised its discretion in declining to implement such trusts. Fieschko fails to show that the court clearly erred in declining to find that Veneman was incapable of, or unwilling to, wisely manage child support payments.
Legal Standards
¶ 24 "Whether [child] support provisions should be modified is [a] discretionary [decision], but may be ordered" only if a circuit court concludes that there has been a "substantial change in circumstances." Winkler v. Winkler , 2005 WI App 100, ¶23, 282 Wis. 2d 746, 699 N.W.2d 652 ; WIS. STAT . § 767.59(1f)(a). The party seeking modification bears the burden of showing that there has been a substantial change in circumstances. Winkler , 282 Wis. 2d 746, ¶23.
¶ 25 The child support modification statute, WIS. STAT . § 767.59(1f), does not define "substantial change," but lists several illustrative events that "may constitute a substantial change."[2] Pertinent here, one illustrative event is a "change in the [child support] payer's earning capacity." Sec. 767.59(1f)(c)3. The court may also consider "[a]ny other factor that the court determines is relevant." Sec. 767.59(1f)(c)4.
¶ 26 Case law provides some guidance regarding the meaning of "substantial change." A "shorthand definition for a substantial change in circumstances is that it is some unforeseen event which occurs after an agreement has been executed." Jalovec v. Jalovec , 2007 WI App 206, ¶24, 305 Wis. 2d 467, 739 N.W.2d 834. Beyond an inability of the parties at the time of the divorce to foresee the change, other "relevant factors" supporting a determination of a substantial change in circumstances include the following: " 'The aging of the children, the increased cost of living, and the ability of the noncustodial parent to pay, the marital status of the parents, and the financial status of the parents and their spouses, ....' " Id. , ¶23 (quoting Miller v. Miller , 67 Wis. 2d 435, 442-43, 227 N.W.2d 626 (1975) ).
¶ 27 We will not disturb the circuit court's findings of fact unless they are clearly erroneous. See Rohde-Giovanni v. Baumgart , 2003 WI App 136, ¶5, 266 Wis. 2d 339, 667 N.W.2d 718. We "independently determine whether the moving party has shown a substantial change in circumstances" as a matter of law. Jalovec , 305 Wis. 2d 467, ¶22. However, our determination " 'must give weight to a trial court's decision because the determination is heavily dependent upon an interpretation and analysis of underlying facts.' " See Pero v. Lucas , 2006 WI App 112, ¶23, 293 Wis. 2d 781, 718 N.W.2d 184 (quoted source omitted) (reviewing a decision regarding proposed modification of custody or placement that also required a showing of a substantial change in circumstances).
Foreseeability Of Fieschko's Increase In Income
¶ 28 The circuit court applied sound reasoning in determining that there was not a substantial change in circumstances in large part because the parties foresaw the possibility of the scale of Fieschko's income increases that in fact occurred. As the court observed, Fieschko knew, by virtue of negotiating a percentage-based child support obligation, that the more money he made, the higher his child support obligation would be. Moreover, we see no flaw in the court's insight that Fieschko's increases in income were not so large as to be unforeseeable to the parties in light of the fluctuations in Fieschko's income that occurred before the parties negotiated the settlement agreement.
¶ 29 It further supports the circuit court's reasoning that Fieschko bases his argument in part on the two-year, upward fluctuation in his income that we have summarized above, and the court was not presented with evidence supporting the inference that his income would not fluctuate downward over time. Indeed, Fieschko testified that 2016 was "kind of an exceptionally busy [work] year." He further testified to additional circumstances regarding his work in 2015 and 2016 that suggested that his increase in income in those years was more of a potential spike than it was an upward trend likely to plateau or continue rising. The court had a reasonable basis to conclude that Fieschko's income, and corresponding child support payments under the guidelines, might stay the same, increase, return to pre-2015 levels, or fall yet lower than pre-2015 levels.
¶ 30 Fieschko argues in essence that the court improperly based its decision on the premise that, because the parties foresaw that his fluctuating income might increase over time, no increase in his income, regardless of how big, could represent a substantial change in circumstances. We disagree that the court operated from the premise that there could be no substantial change in circumstances here because Fieschko and Veneman foresaw the possibility of only some increase in income. It is sufficient to note that under the totality of the circumstances presented to the court and reflected in the record on appeal, Fieschko's two-year increase in income was not out of proportion to the foreseeable circumstances as of the time of the parties' divorce.[3]
¶ 31 Fieschko argues that it is improper to take into account his annual income data from 2005 through 2013. Fieschko does not challenge the accuracy of that data. Instead, he argues that assessing his historical income improperly looks beyond what he argues are the only two pertinent time periods: when the child support obligation was last set by court order, and when he sought modification. We reject this approach as overly narrow. The circuit court here could reasonably determine that Fieschko's historical financial information provided an evident basis to reasonably anticipate large income increases. See Miller v. Miller , 15 Wis. 2d 583, 588, 113 N.W.2d 403 (1962) (in determining whether to modify custody or placement, circuit court may inquire "into matters antedating the preceding judgment" when, in its discretion, circumstances justify that consideration).[4]
¶ 32 Fieschko also contends that, even if some increases in his fluctuating income were foreseen, the fact that his income would rise so much that he paid "disguised" or "hidden maintenance" was not foreseen. By this, Fieschko appears to simply mean that the parties did not foresee that his child support payments would exceed Veneman's total child-related spending in a single year. He argues that on these facts, the child support payments became greater than was "reasonable or necessary" for child support, as these terms are used in WIS. STAT . § 767.511(1)(a), and that Veneman was personally benefitting from the "excess," as if she were receiving maintenance payments.
¶ 33 However, Fieschko's extensive focus on the topic of alleged "disguised maintenance" is irrelevant to the only proper change-in-circumstances issue that Fieschko brings to our attention, namely, whether his income increases were foreseeable to the parties. Whether Veneman used or saved some part of the increased child support payments for her own benefit, as disguised maintenance, is an entirely separate issue from whether a substantial increase in the payments was foreseeable.[5]
¶ 34 Fieschko essentially argues that we should apply a bright line rule under which, regardless of what was foreseeable to the parties at the time of their settlement, an increase in income to a child support payer of a certain size automatically constitutes a substantial change in circumstances. More specifically, he effectively contends that whenever in a single year child support exceeds the budget of the payee's household, it must necessarily be true that the payee is receiving disguised maintenance, and that this in turn would automatically be a substantial change in circumstances. We see no basis for such a bright line rule, which is fundamentally at odds with the standards governing the substantial change in circumstances needed for modification. As noted, the pertinent statute provides that an increase in a payer's income "may constitute a substantial change in circumstances," and does not state that it shall or must constitute a substantial change in circumstances, as Fieschko's bright line rule would sometimes require. See WIS. STAT . § 767.59(1f)(c)3. (emphasis added).
¶ 35 In sum, we see no basis to reverse the circuit court's determination that Fieschko's income increases were foreseeable, and therefore did not constitute a substantial change allowing for the modification of child support.
Standards For Modifying Child Support
¶ 36 Fieschko argues that the circuit court put the cart before the horse and applied factors listed in the statute used to determine whether to deviate from the guideline percentage standards, WIS. STAT . § 767.511(1m), as part of its determination of whether there was a substantial change in circumstances under WIS. STAT . § 767.59(1f). We reject this argument because he fails to explain how the distinction he draws could have mattered here.
¶ 37 In arguing that the court's analysis under WIS. STAT . § 767.59(1f) improperly considered factors listed under WIS. STAT . § 767.511(1m), Fieschko contends that the § 767.511(1m) factors come into play only after a circuit court has determined that there has been a substantial change in circumstances under § 767.59(1f). See § 767.59(2).
¶ 38 We question whether the distinction that Fieschko draws between §§ 767.511(1m) and 767.59 is too rigid. After all, under the support modification statute the court may consider any factor that is relevant. Sec. 767.59(1f)(c)4. And, it would appear that, in many circumstances, the same considerations that inform the deviation standards are going to be pertinent to the substantial change of circumstances standards. It is also not entirely clear that the circuit court here relied on § 767.511(1m), as such.
¶ 39 However, to resolve this issue, we assume without deciding that the court considered factors under WIS. STAT . § 767.511(1m) in deciding whether there was a substantial change justifying modification, and that this assumed consideration was in error. Even with these assumptions, Fieschko fails to explain how such considerations could have mattered. As we have explained, the court clearly determined that the changes to the parties' financial circumstances were not substantial based on their foreseeability. Fieschko fails to show how the court's consideration of, for example, the standard of living of the children had the parents not divorced, see § 767.511(1m)(c), or the financial resources of the children, see § 767.511(1m)(a), detracted from or undermined the court's reasoning.
Request To Divert A Portion Of Child Support Into Trusts
¶ 40 Fieschko argues that the circuit court erred in denying his request to place the alleged "excess" portion of his child support payments, what he characterizes as "disguised maintenance," into trusts pursuant to WIS. STAT . § 767.511(2). As relief, Fieschko asks that we remand to the circuit court to determine the scope of what constitutes disguised maintenance and, therefore, the amount that should be placed into the trusts. We reject this argument because Fieschko fails to show that the court erroneously exercised its discretion in determining that the use of trusts was not necessary.[6]
¶ 41 "The imposition of a trust on child support is a matter within the circuit court's discretion." Lyman , 331 Wis. 2d 650, ¶25 ; see also WIS. STAT . § 767.511(2). Where, as here, "the primary custodian does not consent to the trust, a factual finding must be made as to whether the primary custodian was incapable or unwilling to wisely manage the child support money." Lyman , 331 Wis. 2d 650, ¶25. Further, the court must also "conclude that a trust 'is in the best interests of the child.' " Winkler , 282 Wis. 2d 746, ¶31 (quoted source omitted).
¶ 42 The circuit court found that Veneman credibly testified that she was willing to and capable of using child support funds, including some saved resources, for the benefit of her children. Based on this and other aspects of her testimony, the court saw no basis to find that she was unwilling to or incapable of wisely managing child support funds. Fieschko presents evidence that, viewed in isolation, could give rise to the opposite inference. But this fails to meet his burden to show that the court's findings on this topic were clearly erroneous. Accordingly, we affirm the court's decision to decline Fieschko's requested relief that a portion of his child support payments be placed into trusts.
CONCLUSION
¶ 43 For all of these reasons, we affirm the circuit court's denial of Fieschko's motion to modify child support by reducing his child support obligation and to place a portion of the support payments into a trust.
By the Court .-Order affirmed.
Not recommended for publication in the official reports.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

For context, Wis. Stat . § 767.59(1f)(c) provides:
In an action under this section to revise a judgment or order with respect to an amount of child support, any of the following may constitute a substantial change of circumstances sufficient to justify revision of the judgment or order:
1. Unless the amount of child support is expressed in the judgment or order as a percentage of parental income, a change in the payer's income, evidenced by information received under s. 49.22(2m) by the department or the county child support agency under s. 59.53(5) or by other information, from the payer's income determined by the court in its most recent judgment or order for child support, including a revision of a child support order under this section.
2. A change in the needs of the child.
3. A change in the payer's earning capacity.
4. Any other factor that the court determines is relevant.

Fieschko contends, as part of his substantial change in circumstances argument, that an increase in Veneman 's income after the divorce further weighs in favor of a determination that there was a substantial change in the parties' circumstances. However, Fieschko fails to direct us to facts in the record sufficient for us to evaluate how Veneman's income changed. While Veneman does not dispute that her income increased to some degree between the time of the divorce and Fieschko's motion to modify, the circuit court did not make a specific finding regarding any change in her income, and the record does not reflect a clear set of numbers. Fieschko observes that tax records indicate that Veneman's 2016 income was $ 53,779. However, Fieschko does not direct us to any place in the record providing her 2014 income, and merely points to the income level that the settlement agreement imputed to Veneman, in the event that her actual 2014 income was in fact lower.

Fieschko makes a public policy argument related to the foreseeability of fluctuations in his income. We need not address the substance of this related argument.
Explaining further, the argument is based on Fieschko's contention that he effectively "bought" Veneman's waiver of maintenance in exchange for a lump sum property division payment of $ 302,000. While that specific intent of the parties is not readily obvious from the portions of the record that Fieschko cites for this point, Veneman apparently does not dispute that the lump sum payment in question was a maintenance "buyout."
With that additional background, Fieschko makes the following policy argument. If high income parties anticipate being forced to pay what amounts to "disguised maintenance" through rising child support payments under the percentage guidelines as their incomes rise over time, then they will be discouraged from entering into divorce settlements that include otherwise mutually beneficial maintenance buyouts-that is, discouraged from agreeing to property or cash transfers at the time of divorce that obviate the need for maintenance.
We question premises behind this argument, but in any case we decline to address it. This argument amounts to a call for either legislative action or for fundamental changes in current court interpretations of the pertinent statutes, which would be for our supreme court alone to make.

While it does not matter to the dispositive point that the court made a reasonable determination based largely on foreseeability, we observe that Fieschko fails to persuade us that the court clearly erred in finding that Veneman did not spend on herself, nor did she save for herself, any of the child support funds that she received from Fieschko. Significantly, Fieschko fails to come to grips with the fact that the court found Veneman's testimony credible on these points. In particular, Fieschko does not persuade us that Veneman saving some amount of percentage-based child support payments in a given year necessarily establishes that she received disguised maintenance (in other words, too much child support).
On this topic, we observe that Fieschko apparently never moved the court for an order of contempt based on the allegation that Veneman used child support payments for her own benefit and not for the benefit of the children, which would have been a different proceeding from the one initiated by his motion to modify child support based on a substantial change in circumstances. See Wis. Stat . ch. 785.

We briefly observe that we could reject Fieschko's argument for trusts on two independent grounds that are different from the ground we rely on. First, as we have noted, Fieschko does not persuade us that the circuit court erred in determining that he had not paid disguised maintenance. Second, Fieschko's request that disguised maintenance be placed into trusts for the benefit of his children is inconsistent with his description of disguised maintenance as an amount of child support that exceeds the purpose of child support to reasonably care for the children.
Separately, we put to the side the potential issue of whether, in requesting trusts, Fieschko is required to show a substantial change in circumstances as a proposed modification to the parties' judgment of divorce. The parties do not address this issue. If Fieschko were required to make such a showing, we would resolve this issue based on our conclusion explained above that there has not been a substantial change in circumstances. Again, however, we resolve the trusts issue on a different ground.