COURT OF APPEALS
DECISION
DATED AND FILED

December 3, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP194**

Cir. Ct. No. **2013FA301**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

IN RE THE MARRIAGE OF:

SCOTT R. BERNHARD,

JOINT-PETITIONER-APPELLANT,

V.

CYNTHIA L. BERNHARD,

JOINT-PETITIONER-RESPONDENT.

APPEAL from an order of the circuit court for Dodge County: JOSEPH G. SCIASCIA, Judge. *Affirmed.*

Before Fitzpatrick, P.J., Kloppenburg, and Nashold, JJ.

¶1      KLOPPENBURG, J. Scott R. Bernhard appeals a circuit court order establishing child support and arrearages pursuant to Scott and Cynthia Bernhard's marital settlement agreement.[1]     Scott challenges the court's determination of the amount of undistributed business income that it used to calculate his child support obligation and arrearages, arguing that the court unreasonably rejected his expert's testimony and erroneously exercised its discretion in failing to reduce his corporation's undistributed income consistent with his expert's testimony.  We conclude that Scott fails to show that the circuit court erroneously exercised its discretion in rejecting his expert's testimony and in determining the amount of undistributed income that it used to establish child support.  Therefore, we affirm.

## BACKGROUND

¶2      The following facts are undisputed.  Scott and Cynthia Bernhard, who have three children, were divorced in October 2014, at which time a marital settlement agreement addressing child support was approved by the circuit court. We will set out the key provision of the agreement in the discussion below.  It suffices here to state that the agreement stipulates that Scott will pay as child support nineteen percent of his gross income that is in excess of Cynthia's income. As the circuit court found, and as the parties do not dispute, Scott's base salary is set at an amount equal to Cynthia's salary; his income in excess of Cynthia's income is derived from his solely owned business, Bernhard Plumbing, Inc. (the corporation).

_____

[1]  Because the parties share the same last name, after initial introduction we will refer to each of them by their first names for ease of reading.

¶3      In December 2017, Cynthia filed an order to show cause for contempt alleging that Scott failed to comply with the terms of the child support provision in the marital settlement agreement. The matter was heard before a family court commissioner in June 2018, and then de novo by the circuit court in April 2019. At the hearing before the circuit court, the court heard testimony by Cynthia, Cynthia's expert, Scott, and Scott's expert. At the conclusion of the hearing, the court, pertinent to this appeal, determined Scott's gross business income for the purpose of establishing child support, established child support, and ordered Scott to pay child support arrearages in the amount of $16,632.98. Cynthia filed a motion for reconsideration directed at the court's determination of Scott's gross business income, specifically the court's failure to include in Scott's gross business income rental income and the corporation's undistributed business income. In December 2019, the court issued an order revising its determination of Scott's gross business income to include rental income and the corporation's undistributed business income, and required Scott to pay child support arrearages in the amount of $54,985.43. This appeal follows.

¶4      We present additional background as necessary in our discussion below.

## DISCUSSION

¶5      We begin by addressing a threshold dispute between the parties about which orders of the circuit court are the subject of this appeal. We next present the applicable standards of review and the pertinent terms of the marital settlement agreement's child support provision, along with the terms of the administrative rules that govern that provision. We then present in greater detail

the circuit court's decision on reconsideration. Finally, we address each of Scott's arguments challenging the circuit court's decision and explain why they fail.

*I. Orders on Appeal.*

¶6 As a threshold matter, we address a dispute between the parties about which circuit court orders are the subject of this appeal. Scott asserts that this appeal is of "a series of orders" from the circuit court, dated June 24, 2019; December 12, 2019; January 8, 2020; February 7, 2020; and March 5, 2020. Cynthia argues that only the December 12, 2019, order is before this court. As we explain, we agree with Cynthia.

¶7 "A final judgment or a final order of a circuit court may be appealed as a matter of right to the court of appeals unless otherwise expressly provided by law. A final judgment or final order is a judgment, order or disposition that disposes of the entire matter in litigation as to one or more of the parties[.]" WIS. STAT. § 808.03(1) (2017-2018).[2] Generally, a notice of appeal must be filed within ninety days of the entry of the final judgment or order, or within forty-five days upon written notice of entry of judgment. WIS. STAT. § 808.04(1). "The notice of appeal must be filed within the time specified by law. The filing of a timely notice of appeal is necessary to give the court jurisdiction over the appeal." WIS. STAT. § 809.10(1)(b)6.e. Scott's notice of appeal, filed on January 24, 2020, lists only the December 2019 order, and the parties do not dispute that Scott timely

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

appealed that order.[3]   Nor do they dispute that that order contains the gross business income determination that Scott challenges on appeal.

¶8      As to the two orders that predated Scott's notice of appeal, Cynthia argues that Scott did not timely appeal either the June 24, 2019, order, which contained a contempt finding against him that was not revisited on reconsideration, or the January 8, 2020, order, which was a final order that awarded her attorney's fees and costs.   In his reply Scott does not respond to Cynthia's arguments as to these two orders; therefore, we deem Scott to have conceded the issue as to those two orders.   *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to an argument made in response brief may be taken as a concession).

¶9      As to the two orders that were issued in February and March 2020, after Scott filed his notice of appeal, Scott does not dispute that he did not timely appeal those orders.   Rather, he asserts that it would be "inequitable" not to consider those orders in this appeal.   However, he does not support this conclusory assertion with any citations to legal authority or to the record, and we reject it on that basis.   *See State v. McMorris*, 2007 WI App 231, ¶30, 306 Wis. 2d 79, 742 N.W.2d 322 (court of appeals "may choose not to consider arguments unsupported

---

[3] We do not address whether we lack jurisdiction over the orders that are referenced by Scott in his appellate briefing but are not mentioned in his notice of appeal—dated June 24, 2019; January 8, 2020; February 7, 2020; and March 5, 2020—because we reject Scott's argument on other grounds. *See Milwaukee City Hous. Auth. v. Cobb*, 2014 WI App 70, ¶1 n.2, 354 Wis. 2d 603, 849 N.W.2d 920, *rev'd on other grounds*, 2015 WI 27, 361 Wis. 2d 359, 860 N.W.2d 267 (court of appeals lacked jurisdiction to review circuit court's oral ruling on motion for reconsideration in part because notice of appeal failed to mention the order denying motion for reconsideration).

by references to legal authority, arguments that do not reflect any legal reasoning, and arguments that lack proper citations to the record.").

¶10     In sum, we address only Scott's arguments challenging the circuit court's December 2019 order establishing child support.

## II. Applicable Standard of Review.

¶11     This appeal calls upon us to review the circuit court's discretionary decisions regarding expert testimony and child support, which we will uphold unless they are clearly erroneous. *Lyman v. Lyman*, 2011 WI App 24, ¶12, 331 Wis. 2d 650, 795 N.W.2d 475 ("Child support determinations are within the circuit court's discretion and will not be reversed absent an erroneous exercise of discretion."); *Schorer v. Schorer*, 177 Wis. 2d 387, 398, 501 N.W.2d 916 (Ct. App. 1993) (circuit court's decision to accept or reject expert testimony analyzed for erroneous exercise of discretion). "A discretionary determination, to be sustained, must demonstrably be made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law." *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16. A parent's income and expenses are facts to be determined by the circuit court based upon the evidence and we sustain the circuit court's determinations unless clearly erroneous. *Lellman v. Mott*, 204 Wis. 2d 166, 170–71, 554 N.W.2d 525 (Ct. App. 1996).

## III. Marital Settlement Agreement Child Support Provision.

¶12     The marital settlement agreement requires the annual exchange of the parties' tax returns and provides in pertinent part:

> Child Support. Each year Scott will set his base salary at an amount that is equivalent to Cynthia's base salary. Based upon the substantially equal placement time

between the parties and their equal base incomes, there shall not be a monthly child support payment between the parties. However, the parties agree and acknowledge that Scott generally receives income in excess of Cynthia's income. Therefore, commencing in 2016 for income earned in 2015, Scott shall pay Cynthia 19% of his total gross income in excess of Cynthia's total gross income as defined in DCF 150.02(13).

¶13 The circuit court interpreted the agreement as providing that Scott would set his base salary at an amount equivalent to Cynthia's salary and would pay nineteen percent of the gross business income as child support. Scott does not challenge the court's interpretation that the agreement called on the court to set nineteen percent of the gross business income as child support. Scott does challenge how the court calculated the gross business income for the purpose of establishing child support, specifically how the court determined the undistributed business income. We now turn to the rules governing that calculation.

## IV. *Applicable Rules.*

¶14 As stated, the parties' marital settlement agreement provides that "Scott shall pay Cynthia 19% of his total gross income in excess of Cynthia's total gross income as defined in DCF 150.02(13)." WISCONSIN ADMIN. CODE § DCF 150.02(13) (through October 2020)[4] provides in pertinent part:

> (13) "Gross income."
>
> (a) "Gross income" means all of the following:
>
> 1. Salary and wages.
>
> .…

---

[4] All references to the Wisconsin Administrative Code are to the October 2020 version unless otherwise noted.

9. Undistributed income of a corporation, including a closely-held corporation, or any partnership, including a limited or limited liability partnership, in which the parent has an ownership interest sufficient to individually exercise control or to access the earnings of the business…. In this paragraph:

a. "Undistributed income" means federal taxable income of the closely held corporation, partnership, or other entity plus depreciation claimed on the entity's federal income tax return less a reasonable allowance for economic depreciation.

A note to this subsection directs the reader to WIS. ADMIN. CODE § DCF 150.03(2): "Note: Income considered under this subsection is subject to the adjustments under s. DCF 150.03(2)." That section provides:

DETERMINING INCOME MODIFIED FOR BUSINESS EXPENSES. In determining a parent's monthly income available for child support under sub. (1), the court may adjust a parent's gross income as follows:

(a) Adding wages paid to dependent household members.

(b) Adding undistributed income that meets the criteria in s. DCF 150.02 (13) (a) 9. and that the court determines is not reasonably necessary for the growth of the business. The parent shall have the burden of proof to show that any undistributed income is reasonably necessary for the growth of the business.

(c) Reducing gross income by the business expenses that the court determines are reasonably necessary for the production of that income or operation of the business and that may differ from the determination of allowable business expenses for tax purposes.

WIS. ADMIN. CODE § DCF 150.03(2).

¶15 The circuit court interpreted the interplay of WIS. ADMIN. CODE §§ DCF 150.02 and 150.03 to mean that the circuit court has the discretion to include undistributed business income reported as the corporation's federal taxable

income, less economic depreciation, based on whether the court finds that the undistributed business income is not reasonably necessary for the business's growth or that the undistributed business income should be reduced by business expenses that are reasonably necessary for the business's operation. *See* WIS. ADMIN. CODE §§ 150.02(13)(a)9. and 150.03(2)(b) and (c). Scott does not dispute this reading of the rules. However, he does challenge how the court exercised its discretion in determining what, if any, deductions to make from the undistributed business income, reported as the corporation's federal taxable income, for the purpose of establishing child support. We next summarize additional background pertinent to his arguments.

## V. Additional Pertinent Background.

¶16    For purposes of establishing child support in its June 2019 decision, the circuit court included in Scott's gross business income wages paid by the corporation to the parties' children. In her motion for reconsideration, Cynthia asked that the court also include in Scott's gross business income rental income and undistributed business income for the purpose of establishing child support. The court acknowledged that it had overlooked rental income and directed that rental income be included in Scott's gross business income, and Scott does not challenge that direction on appeal. The court devoted the majority of its decision on reconsideration to the inclusion of undistributed business income. As stated, the court interpreted the governing administrative rules as giving it the discretion to determine how much of the undistributed business income to include.

¶17    The circuit court started with the business's reported federal taxable income, indicated that it had already determined that wages paid to the parties' minor children would be added to that figure,[5] and considered whether to deduct from that figure any amount reasonably necessary for the operation and growth of the business.  It reviewed evidence presented by Scott showing the corporation's cash on hand in excess of its federal taxable income for the years 2014-2017, along with the corporation's gross receipts, and found that the corporation's cash on hand was "adequate to allow the corporation to continue to do business" and that "exempting a certain amount of corporate profit [was not] reasonabl[y] necessary for the growth of the business."

¶18    The circuit court reached these findings after reviewing in detail the testimony by Scott's expert.  The court referenced the expert's testimony that the reported federal taxable income "does not present an accurate picture of the business," and explained that the expert testified that WIS. ADMIN. CODE § 150.03(2)(c) "says you need to go above and beyond the tax returns, look under the hood and determine if there is anything else affecting the cash flows that could be used to distribute for purposes of support."  The court also referenced the expert's testimony that the expert calculated the cash available for child support based on the corporation's need to reinvest in itself and to provide vehicles for its plumbers, and on the loan the business took out that Scott used to pay the property

---

[5] Scott appears to challenge the circuit court's inclusion of wages the corporation paid to the parties' minor children under WIS. ADMIN. CODE § 150.03(2)(a), but he does not support his challenge with cites to the record or to relevant legal authority; therefore, we do not consider it further.  *See* **State v. McMorris**, 2007 WI App 231, ¶30, 306 Wis. 2d 79, 742 N.W.2d 322 (court of appeals "may choose not to consider arguments unsupported by references to legal authority, arguments that do not reflect any legal reasoning, and arguments that lack proper citations to the record").

division ordered in the divorce judgment. The court referenced the expert's testimony that the corporation's balance sheets and statement of operations as reported on the income tax returns had to be reconciled to "determine what cash was actually available" for child support, that the taxable income reported on the federal tax turns "was not a good proxy for cash that is available to distribute" for child support, and that he determined what cash was available "after the business has run its operations, reinvested in itself and paid off its creditors." Thus, for 2017, the corporation reported taxable income of $52,392, but the expert testified that the cash available for support equaled $16,184.

¶19 The circuit court rejected the expert's testimony that Scott's undistributed business income should be based on a "cash available" analysis of the corporation's finances rather than on its gross income as reported on its federal tax return, as provided by rule. The court found that the expert's "under the hood" analysis was not intended by the parties in their marital settlement agreement but would instead result in "expensive litigation each year which will deplete the parties' ability to provide support for the children and result in further acrimony between the parents." The court also found that the expert's analysis was not appropriate in this case because it presented "a false picture of [Scott's] income with the result that his child support obligation is reduced to a fraction of what it should be." Finally, the court determined that the analysis undertaken by the expert was not required by WIS. ADMIN. CODE § DCF 150.02, which refers to "federal taxable income" not "cash available." The court reasoned:

> [WIS. ADMIN. CODE § DCF 130] does not require the Court to "go under the hood" to determine what the "cash available" for support is. DCF-150 was written to allow but not require a Court to add to the taxable income depreciation, wages paid to household dependents, and undistributed business income which the support payor has control over. Such calculations are within the ability of

litigants, attorneys, judges and court commissioners with a minimal amount of assistance from experts such as accountants and other tax professionals.

¶20    Based on its findings summarized above, the circuit court determined that no deduction from the corporation's federal taxable income was reasonably necessary for the corporation to continue to do business or to grow. The court found that the calculations proposed by Cynthia in her motion for reconsideration accurately reflected the court's inclusions and exclusions regarding the wages paid to the parties' minor children, rental income, depreciation, and undistributed income, and adopted them as its findings. Based on those findings, the court determined that Scott owed child support arrearages in the amount of $54,985.43 for the years 2015-2017.

¶21    We now proceed to address Scott's arguments challenging the circuit court's decision.

*VI.  Scott's Arguments.*

¶22    Scott appears to make two overarching arguments. First, Scott argues that the circuit court unreasonably rejected his expert's testimony. Second, Scott argues that the circuit court relied on an incorrect interpretation of the governing rules. We address and reject each of Scott's two arguments as follows.

¶23    First, as stated, Scott argues that the circuit court unreasonably rejected his expert's testimony. However, the above summary of the court's decision refutes that argument. As we now explain, Scott's more specific contentions suffer from the same problem. Scott contends that the court gave no reason for its apparent crediting of his expert's testimony in its June 2019 decision and subsequent "about face" in its December 2019 decision. Even if Scott's

characterization of the June decision is accurate, his contention that the court gave no reason for rejecting his expert's testimony in the December decision is belied by the reasoning stated by the court as summarized above.

¶24   Scott also contends that the circuit court ignored certain evidence that showed, according to his expert, a negative "cash available" balance for 2015, and other evidence that showed, according to the expert, the necessity of the corporation's business expenses.   However, as summarized above, the court explained why it rejected the expert's calculations based on the evidence.

¶25   Scott also contends that the circuit court ignored his expert's testimony as to the corporation's business requirements.  However, while the court rejected the expert's analysis of the implications of those requirements, the court expressly reviewed the undisputed amounts of cash balances as compared to the federal taxable income for each year and determined the cash balances sufficed to cover the corporation's operations and growth.

¶26   Scott also suggests that the circuit court should have deducted withholding and taxes from the corporation's federal taxable income, a suggestion that he states expressly in his reply brief, but he develops no support in the record or the law for such a proposition independent of his reliance on his expert's "cash available" analysis, which the court rejected as summarized above.

¶27   Scott also appears to fault the circuit court for rejecting his expert's testimony without finding it not credible.  However, the court did not reject the testimony based on credibility, but on the court's findings that the expert's analysis was neither intended by the parties nor an appropriate or accurate reflection of the facts of this case, and on its determination that the analysis was also not required by law.

¶28    Scott also contends that, while it was within the circuit court's discretion to disregard testimony from Scott's expert, the court had no discretion to do so "upon the basis stated by the court."  He cites no law for this proposition.  "Arguments unsupported by references to legal authority will not be considered." *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).  He suggests that the court lacked such discretion because his expert's testimony was unrefuted, but he also concedes that a circuit court may reasonably reject even unrefuted expert testimony.  *See Capitol Sand & Gravel Co., Inc. v. Waffenschmidt*, 71 Wis 2d 227, 233–34, 237 N.W.2d 745, (1976) (circuit court is not required to accept an expert's uncontradicted testimony); *Brogan v. Industrial Cas. Ins. Co.*, 132 Wis. 2d 229, 239, 392 N.W.2d 439 (Ct. App. 1986) (trier of fact is entitled to accept or disregard expert testimony).  Moreover, as stated, the court's order demonstrates reasoned decision-making:  it rejected the testimony of Scott's expert because the "cash available" method of accounting was not intended by the parties, was not required by the law cited in the parties' marital settlement agreement, and was totally inappropriate for determining Scott's income.

¶29    In sum, as shown above, the circuit court engaged in "a rational mental process by which the facts of record and law relied upon are stated and are

considered together for the purpose of achieving a reasoned and reasonable determination." *See* **Hartung**, 102 Wis. 2d at 66.[6]

¶30 Scott's second overarching argument, as stated, appears to be that the circuit court relied on an incorrect interpretation of the governing rules. Specifically, Scott contends that the court incorrectly interpreted the rules when it analogized the gross income of an individual to the gross income of a corporation. In its order, the court observed:

> A prudent wage earner sets aside money periodically to pay for unexpected car and home repairs, uninsured medical expenses, the eventual replacement of his vehicle, and other "rainy day" emergencies. The law does not allow him or her to shelter the income that funds those savings from his child support obligations, even though those savings are critical to his ability to get to work and earn the money that funds the child support. He or she has to pay bills including loans, gas to get to work, car repairs and the cost of a replacement vehicle, etc. all from funds after the child support has been paid.

---

[6] In support of his argument that the circuit court erroneously rejected his expert's "cash available" analysis, Scott references two "worksheets" included in his appendix, which he asserts show the difference between the "maximized" child support award established by the circuit court and the lower amount that the court should have awarded. Scott acknowledges that these worksheets were not presented to the circuit court, and we do not consider them for that reason. *See* **Reznichek v. Grall**, 150 Wis. 2d 752, 754 n.1, 442 N.W.2d 545 (Ct. App. 1989) ("The appendix may not be used to supplement the record"). We also observe that such non-record information created by Scott as part of his argument should be included in his brief and in his word-count, *see* WIS. STAT. RULE 809.19(2), and that the worksheets are so conclusory (using generic terms like "increase" and "decrease" and "more" or "less" without explanation) as to be facially of no use.

In addition, throughout his appellate briefs, Scott characterizes the circuit court with terms such as "confused," "forgetful," and unable to "grasp" the applicable law and facts. Counsel's characterizations of the circuit court are belied by the record, which reveals a thorough examination and understanding of the law, the parties' marital settlement agreement, and the testimony and evidence. We caution counsel against such vague and unmerited criticisms of the circuit court.

15

> A sole proprietor, such as a plumber, for example, is in the same position. He has to have cash on hand to pay for replacement of equipment, inventory, vehicles and other "rainy day" emergencies which cannot be specifically predicted but which occur at random. However, the sole proprietor has to pay his or her child support obligation on all of the income and then has to set money aside for those contingencies.

Scott argues that the court's analogy shows that the court was "treating the corporation and Scott Bernhard as one and the same entity." We do not agree. The court was analogizing the gross income of an individual to that of a corporation to make the point that child support obligations are based on gross income. The court's analogy was appropriate, given that WIS. ADMIN. CODE § DCF 150 defines "undistributed income" as "federal taxable income." Sec. DCF 150.02(13)(a)9.a. Just as the administrative code does not instruct circuit courts to subtract an individual wage earner's tax bill from that individual's gross income, the code does not instruct circuit courts to subtract a corporation's tax bill from its gross income. Secs. DCF 150.02; 150.03. Scott does not cite any law to the contrary.

¶31     Scott also seems to argue that the circuit court relied on an incorrect interpretation of the governing rules when the court, "citing the permissive language in this subsection, chose to ignore it completely without explanation, while at the same time adding permissive corporate income as if it were mandatory." However, as summarized above, the court expressly stated that it had the discretion under the rule to include undistributed business income and any adjustments it determined were supported by the evidence, including adding wages paid to minor children and rental income, and deducting expenses reasonably necessary for the corporation's operation and growth. The record

shows that the court exercised its discretion consistent with the rule and the evidence that it credited.

¶32 Finally, Scott attempts to characterize his challenge to the circuit court's exercise of discretion and findings of fact as a challenge to the court's application of the rules to undisputed facts, which is a question of law reviewed de novo. However, when Scott attempts to develop this argument, he reverts to his overarching argument that the court disregarded his expert's testimony in making its factual findings and applying the DCF rules. We have explained above why that argument fails.

## CONCLUSION

¶33 For the reasons stated, we conclude that Scott fails to show that the circuit court erroneously exercised its discretion in establishing child support and arrearages and, therefore, we affirm.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.