IN RE the MARRIAGE OF:

Joy M. WINKLER n/k/a Joy Capizzi,
Petitioner-Appellant-Cross-Respondent,

v.

Robert W. WINKLER,
Respondent-Respondent-Cross-Appellant.

Court of Appeals

*No. 2004AP1231. Oral argument April 05, 2005.
—Decided April 26, 2005.*

2005 WI App 100

(Also reported in 699 N.W.2d 652.)

749

On behalf of the petitioner-appellant-cross-respondent, the cause was submitted on the briefs and oral argument of *Jane E. Probst* of *Ladd, Milaeger, Rebholz & Probst LLP* of Waukesha.

On behalf of the respondent-respondent-cross-appellant, the cause was submitted on the brief and oral argument of *Phil Elliott Jr.* of *Elliott, Elliott & Staskunas* of Milwaukee.

Before Wedemeyer, P.J., Curley and Kessler, JJ.

¶ 1. KESSLER, J. Joy M. Winkler, formerly known as Joy Capizzi and now known as Joy Zablocki ("Zablocki"),[1] appeals from orders denying her motions to reopen the property division of her divorce judgment and to award her a portion of new "backdrop" pension benefits her ex-husband will receive as a result of a post-divorce change in Milwaukee County's pension policy. She also appeals from an order denying her motion for reconsideration. We affirm the trial court's orders with respect to this issue.

¶ 2. Robert W. Winkler ("Winkler") cross-appeals from orders that require him to pay increased child support based on the backdrop pension benefit. We affirm the trial court's conclusion that the backdrop benefit is income that must be considered for child support purposes.[2] We also affirm the trial court's decision that this be paid as a lump sum.

## BACKGROUND

¶ 3. The parties married in June 1974 and were divorced in November 1993, after nineteen-and-a-half years of marriage. They have two daughters, born in

[1] Joy Winkler recently married and is now known as Joy Zablocki.

[2] The Honorable Gary A. Gerlach presided over the original divorce proceedings. Because of judicial assignment, the Honorable Michael J. Dwyer presided over the motions at issue in this appeal.

1980 and 1987. At the time of the divorce, Winkler was forty-nine years old and was a long-time employee of Milwaukee County. Although he was eligible to retire effective January 1, 1994, both parties understood that he intended to continue working.

¶ 4. One of the contested issues in the divorce was dividing Winkler's pension. The matter was scheduled for trial, but the parties resolved the contested issues by entering into a Marital Settlement Agreement, ("Agreement"), which was approved by the trial court and incorporated in the Judgment of Divorce ("Judgment"). The Agreement was obviously the product of substantial negotiation between the parties. Original provisions relating to the pension awarded Zablocki one-third of the gross monthly pension payments Winkler would receive from Milwaukee County. On the day of trial, these provisions were crossed out and initialed by the parties. In lieu of the fixed percentage of unknown future payments, the parties amended the Agreement to award Zablocki a fixed amount of Winkler's pension. They agreed that:

> [Zablocki] is awarded one-half of the accrued monthly benefit that [Winkler] has with the Employees' Retirement System of the County of Milwaukee ["ERS"]. The administrator of [ERS], shall prepare an accrued monthly benefit calculation and schedule setting forth the present monthly benefit that [Winkler] would be eligible to receive per month for each year of the retirement age of 55 through 65, inclusive. [Zablocki] shall be awarded a wage assignment for one-half the present monthly annuity benefit as calculated by the plan administrator based upon the actual year [Winkler] begins receiving his retirement benefits.

¶ 5. Promptly after the November 1993 divorce, Zablocki moved the trial court for a more specific order

indicating the specific amount of payments from the pension that would be due her whenever Winkler retired. In January 1994, ERS prepared a calculation of the monthly retirement benefits that Winkler would receive, depending on his age at retirement, over a period of ten possible retirement years. It appears that the trial court accepted the calculation of the monthly retirement benefits and included it in an order which reiterated that, pursuant to the Judgment, Zablocki would receive monthly one-half of the applicable listed amount for the year in which Winkler retired. For example, according to the order, if Winkler retired at age fifty-eight (which he ultimately did), Zablocki would receive one-half of $997.07 ($498.54) per month.

¶ 6. Seven years after the divorce, on January 1, 2001, Milwaukee County adopted a pension enhancement plan that has subsequently been the subject of significant litigation. *See, e.g., Dunn v. Milwaukee County*, 2005 WI App 27, 693 N.W.2d 82 (petition for review pending). The feature of the plan that brings the parties to court at this time is generally described as a "backdrop" provision. The "backdrop" has been explained as a mechanism to permit employees who stay beyond their earliest available retirement date to receive both a lump-sum payment and a monthly retirement benefit. The word "drop" in backdrop is an acronym for Deferred Retirement Option Program. It allows employees who stay longer than required to reach "back" to a prior date when they could have retired (but did not) and to collect a lump-sum payment equal to the total payments they could have collected between the selected "back" date and the actual date of retirement. This benefit first became available to Winkler when it was adopted in January 2001. During oral argument, counsel for Zablocki acknowledged that nei-

753

ther party knew at the time of the divorce that this benefit would become available.

¶ 7. Winkler retired effective May 1, 2002, when he was fifty-eight years old. He elected to go "back" to January 1, 1994, for purposes of the retirement calculations and the lump-sum payment. As a result, he will receive a monthly pension of $1330 and a lump-sum payment of $168,168.40; he may choose to roll the latter into an IRA, and thereby defer paying taxes on that amount until he withdraws all or any part of the money.

¶ 8. In February 2002, Zablocki filed an order to show cause, asserting that Winkler had failed to pay her the pension benefits she believed were due, including her share of the lump-sum backdrop benefit.[3] After a court commissioner denied Zablocki some of the benefits she was seeking, the trial court considered, during a series of hearings in 2003 and 2004, a host of issues raised by Zablocki and Winkler.

¶ 9. As relevant to this appeal, the trial court concluded that there were no grounds to reopen the Judgment under WIS. STAT. § 806.07 (2003–04)[4] because the motion to reopen was not brought within one year after the Judgment was granted, and because there were no extraordinary circumstances that would justify the reopening. The trial court specifically found that the enhanced pension benefits do not constitute an extraordinary circumstance because the pension benefit changes did not occur until after the Judgment was

---

[3] Zablocki also sought a share of any payment Winkler received for unused sick allowance. In addition, there was an issue whether she was properly named as a survivor under his pension. Those issues are not before us on appeal and will not be addressed.

[4] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

granted. The trial court further found that the property division provision in the Judgment was unambiguous and was therefore not subject to modification under Wis. Stat. § 767.32.

¶ 10. Zablocki appealed the trial court's decision with respect to pension benefits. She argues that the trial court erroneously exercised its discretion when it denied her motion to reopen the Judgment and award her a share of the new backdrop benefit. She contends that the backdrop pension benefits are "marital property"[5] because the backdate Winkler selected, January 1, 1994, was a mere six weeks after the divorce date, and thus reflected work he performed during the marriage.

¶ 11. With respect to child support, the trial court concluded that the backdrop payout was income for purposes of determining child support. The trial court ordered Winkler to pay child support in the amount of $22,870.90 from his backdrop pension benefits. This amount was seventeen percent of the gross payment, reduced by an estimated tax impact to Winkler of twenty percent.[6]

¶ 12. Winkler cross-appealed the trial court's order that he pay any child support on the backdrop

---

[5] These benefits should more accurately be described as "property subject to division." The "marital property" concepts of Wis. Stat. ch. 766 do not control Wis. Stat. § 767.25, the provisions of the statutes dealing with division of property at divorce. *See Haack v. Haack*, 149 Wis. 2d 243, 255, 440 N.W.2d 794 (Ct. App. 1989).

[6] Zablocki did not appeal the decision to reduce the child support award for taxes to be paid, hence we do not address that aspect of the award although we note that Wis. Admin. Code § DWD 40, defining how child support is to be calculated, does not base child support on after-tax income.

payment. He argues that enhanced pension benefits are not income for child support purposes. In the alternative, he argues that even if the enhanced benefits are income, the trial court erroneously exercised its discretion when it awarded Zablocki a lump-sum payment of child support.

¶ 13. We affirm the trial court's order denying Zablocki's motion to reopen the property division. We affirm the trial court's conclusion that the backdrop benefit is income that must be considered for child support purposes. We also affirm the trial court's decision to order that this be paid as a lump sum.

## DISCUSSION

### I. Reopening the property division

¶ 14. Zablocki seeks to reopen and modify the property division of the Judgment. On appeal, a trial court's order denying a motion for relief under WIS. STAT. § 806.07 will not be reversed unless there has been an erroneous exercise of discretion. *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 541, 363 N.W.2d 419 (1985). An appellate court will not find an erroneous exercise of discretion if the record shows that the trial court exercised its discretion and that there is a reasonable basis for the court's determination. *Howard v. Duersten*, 81 Wis. 2d 301, 305, 260 N.W.2d 274 (1977). "The term 'discretion' contemplates a process of reasoning which depends on facts that are in the record or are reasonably derived by inference from the record, and yields a conclusion based on logic and founded on proper legal standards." *Shuput v. Lauer*, 109 Wis. 2d 164, 177–78, 325 N.W.2d 321 (1982).

756

¶ 15. Generally, a final division of property is fixed for all time and is not subject to modification. *See Krieman v. Goldberg*, 214 Wis. 2d 163, 173, 571 N.W.2d 425 (1997). WISCONSIN STAT. § 767.32(1)(a) provides for modification of judgments with respect to maintenance and child support, but also states: "a judgment or order that waives maintenance payments for either party shall not thereafter be revised or altered in that respect *nor shall the provisions of a judgment or order with respect to final division of property be subject to revision or modification.*" (Emphasis added.)

¶ 16. Rules of civil procedure applicable to divorce cases permit reopening of final judgments only in extraordinary circumstances. WISCONSIN STAT. § 806.07[7]

---

[7] WISCONSIN STAT. § 806.07 provides:

**Relief from judgment or order.** (1) On *motion* and upon such terms as are just, the court, subject to subs. (2) and (3), may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:

(a) Mistake, inadvertence, surprise, or excusable neglect;

(b) Newly-discovered evidence which entitles a party to a new trial under s. 805.15 (3);

(c) Fraud, misrepresentation, or other misconduct of an adverse party;

(d) The judgment is void; .

(e) The judgment has been satisfied, released or discharged;

(f) A prior judgment upon which the judgment is based has been reversed or otherwise vacated;

(g) It is no longer equitable that the judgment should have prospective application; or

(h) Any other reasons justifying relief from the operation of the judgment.

generally permits reopening within the shorter of one year of the judgment or a "reasonable time," and requires that a party show one of numerous enumerated reasons, including mistake, inadvertence, excusable neglect, new evidence which would entitle a party to a new trial, fraud or other misconduct, or "any other reasons justifying relief from operation of the judgment." Zablocki relies on the catchall reason—"other reasons justifying relief"—in support of her motion to reopen the Judgment as to the allocation of pension benefits, so that she may seek a share of the backdrop payment. *See* § 806.07(1)(h).

¶ 17. The supreme court has had occasion to apply WIS. STAT. § 806.07 to divorce cases in the context of property divisions, and has held that the trial court has the power to reopen property divisions, even if the judgment is based on a stipulation. *See Conrad v. Conrad*, 92 Wis. 2d 407, 413, 284 N.W.2d 674 (1979). When the motion is based on § 806.07(1)(h) ("other reasons justifying relief"), it must be made within a reasonable time. *Conrad*, 92 Wis. 2d at 414. Whether the motion to reopen was brought pursuant to § 806.07(1)(a) or (h), the test on review of the trial court's order refusing to reopen the judgment is still the same: Was such refusal an erroneous exercise of discretion? *See Grodin v. Smith*, 82 Wis. 2d 667, 673–74, 264 N.W.2d 239 (1978).

---

**(2)** The motion shall be made within a reasonable time, and, if based on sub. (1) (a) or (c), not more than one year after the judgment was entered or the order or stipulation was made. A motion based on sub. (1) (b) shall be made within the time provided in s. 805.16. A motion under this section does not affect the finality of a judgment or suspend its operation. This section does not limit the power of a court to entertain an independent action to relieve a party from judgment, order, or proceeding, or to set aside a judgment for fraud on the court.

¶ 18. Zablocki relies substantially on *Conrad* in support of her request to reopen the Judgment because of "other reasons justifying relief." That reliance is misplaced in light of the facts in *Conrad* and here. In *Conrad*, the judgment incorporated a marital settlement agreement. The wife alerted her counsel and the trial court to her concerns about the judgment while it was still being drafted. 92 Wis. 2d at 411. Then, when the trial court nonetheless signed the proposed judgment to which the wife objected, she filed a motion for relief within two months of the judgment. *Id.* at 414. In short, the moving party in *Conrad* immediately and consistently claimed that she did not understand the agreement, did not agree with some terms her lawyer inserted in the findings, and that she was unwilling to accept the disparity in property division that the agreement disclosed. *Id.* at 411–12.

¶ 19. Here, the original Agreement was thoroughly understood by all parties. They agreed on the day of trial to significantly modify the terms at issue. In denying Zablocki's recent motion to reopen the Judgment, the trial court specifically found that there was no ambiguity in the Judgment regarding the pension benefits. We agree. The final modifications to the Agreement that were ultimately adopted as the Judgment were discussed on the record and were approved by both parties. Zablocki chose the certainty of receipt of a fixed dollar amount from Winkler's monthly pension payments, as reflected by the Judgment and supplemental order, rather than a fixed percentage of a dollar amount of monthly pension that could (and did) change over time. The facts here contrast those in *Conrad*, where the person directly affected by the

759

disputed term objected promptly, openly, and consistently to the provision at issue. *See id.* at 411–12.

¶ 20. Nor, as Zablocki effectively concedes, is this a request that fits within the other provisions of WIS. STAT. § 806.07. There is no claim of mutual mistake or fraud; at the time of the divorce, no one knew the pension backdrop benefit was going to be available. This is not a situation where any evidence suggests Winkler had any part in creating the backdrop provisions, nor did he deceive either Zablocki or the trial court about the pension as it existed at the time of the divorce. The backdrop benefit provisions were an unanticipated windfall.

¶ 21. Zablocki argues that Winkler's employment created the pool from which he was able to elect the "backdrop" lump-sum payment. Those efforts, she correctly points out, were marital efforts. The fruits of marital efforts are generally subject to division. *See* WIS. STAT. § 767.25. What is also clear is that those efforts, to the extent they took the form of a pension, were thoroughly negotiated and divided at the time of the divorce in a manner satisfactory to the parties at that time, as reflected in the amended Marital Settlement Agreement and Judgment of Divorce. Were we to now conclude, as Zablocki urges, that post-divorce employer modification of pension payout terms, years after a divorce, compels reopening of the divorce Judgment, finality in division of retirement benefits would essentially evaporate. No logical reason suggests itself to limit such a reopening as is requested here to only those cases where the benefits improve; the named pension recipient would assert equally substantial claims should benefits be reduced or otherwise disadvantageously modified. We decline to take such a drastic leap into the pool of uncertainty where, as here, the en-

hanced benefits become available years after the divorce. We conclude that the trial court did not erroneously exercise its discretion when it declined to reopen the Judgment.

## II. Child support

¶ 22. The trial court ordered Winkler to pay $22,870.90 in child support. This calculation was based on seventeen percent of the lump-sum backdrop payment, reduced by twenty percent to cover the estimated income taxes that Winkler must pay on the payment. Winkler raises several issues. He argues that backdrop pension benefit is not income for child support purposes.[8] In the alternative, he argues that even if the enhanced benefits are income, the trial court erroneously exercised its discretion when it awarded Zablocki a lump-sum payment of child support. He also argues that the trial court should have imposed a trust on the portion of the backdrop benefit to be paid as child support.

¶ 23. At issue is the modification of an existing child support order. Whether support provisions should be modified is discretionary, but may be ordered only upon a finding of a substantial change in circumstances. *Peters v. Peters*, 145 Wis. 2d 490, 493, 427 N.W.2d 149 (Ct. App. 1988); Wis. Stat. § 767.32(1)(a). "The burden of showing that there has been a change in circumstances sufficient to justify a modification falls to

---

[8] The issue of Winkler's continuing child support obligation based on his current monthly income is not at issue in this appeal. We consider only whether he must pay additional child support based on the $168,168.40 he will receive as a backdrop lump-sum payment.

the party seeking modification." *Rottscheit v. Dumler*, 2003 WI 62, ¶ 11, 262 Wis. 2d 292, 664 N.W.2d 525.

¶ 24. Once a substantial change in circumstances has been shown, the trial court must exercise its discretion as to modification of child support. *See Sellers v. Sellers*, 201 Wis. 2d 578, 585, 549 N.W.2d 481 (Ct. App. 1996). WISCONSIN STAT. § 767.25 and WIS. ADMIN. CODE § DWD 40 provide the framework for setting and modifying child support. The statute authorizes the Department of Workforce Development to establish income percentage standards from which to set child support. *See* § 767.25(1j).[9] Essentially, a fixed percentage is applied to the gross income of the parent paying support; the percentage varies based on the number of children and the time the paying parent spends with the children. *See* § DWD 40.03. The applicable percentage here, for one child, is seventeen percent.

¶ 25. There has been no serious dispute that Winkler's financial circumstances changed substantially when he chose to accept the backdrop benefit. Thus, the issue is whether the trial court erroneously exercised its discretion when it modified the child support order to require Winkler to pay a portion of his backdrop payment as a lump sum.

## A. Whether the backdrop payment is "income"

¶ 26. The percentage standards are specifically required to be applied to gross income, which is defined

---

[9] WISCONSIN STAT. § 767.25(1j) provides: "Except as provided in sub. (1m), the court shall determine child support payments by using the percentage standard established by the department under s. 49.22 (9)."

by Wis. Admin. Code § DWD 40.02(13). Section DWD 40.02(13) provides in relevant part:

(a) "Gross income" means all of the following:

1. Salary and wages.

2. Interest and investment income.

3. Social Security disability and old-age insurance benefits under 42 USC 401 to 433.

4. Net proceeds resulting from worker's compensation or other personal injury awards intended to replace income.

5. Unemployment insurance.

6. Income continuation benefits.

7. Voluntary deferred compensation, employee contributions to any employee benefit plan or profit-sharing, and voluntary employee contributions to any pension or retirement account whether or not the account provides for tax deferral or avoidance.

8. Military allowances and veterans benefits.

9. Undistributed income of a corporation, including a closely-held corporation, or any partnership, including a limited or limited liability partnership . . . .

. . . .

10. All other income, whether taxable or not, except that gross income does not include any of the following:

a. Child support.

b. Foster care payments under s. 48.62, Stats.

763

c. Kinship care payments under s. 48.57(3m) or (3n), Stats.

d. Public assistance benefits under ch. 49, Stats., except that child care subsidy payments under s. 49.155, Stats., shall be considered income to a child care provider.

e. Food stamps under 7 USC 2011 to 2036.

f. Cash benefits paid by counties under s. 59.53(21), Stats.

g. Supplemental Security Income under 42 U.S.C. 1381 to 1383f and state supplemental payments under s. 49.77, Stats.

h. Payments made for social services or any other public assistance benefits.

Winkler argues that the backdrop pension is not income, and that it cannot be counted for child support purposes because it fits in none of the categories described by § DWD 40.02(13)(a). In response, Zablocki notes, and it was not disputed during oral argument, that Winkler may choose to receive the backdrop in cash, subject to taxation, or he may roll it into an IRA to avoid immediate taxation.[10] Whether this available payment is characterized as "deferred compensation" under § DWD 40.02(13)(a)7. or "other income" under § DWD 40.02(13)(a)10., we hold that it is gross income subject to the child support standards. Winkler's ability to defer receipt of the benefit, potentially until the child is an adult, cannot be used to deprive the child of the benefit of this support.

---

[10] The record reflects that ERS is holding Winkler's entire backdrop payment pending resolution of this litigation.

## B. Whether the trial court erroneously ordered that Winkler pay support from the backdrop as a lump sum

¶ 27. Winkler disputes the application of the standard child support guidelines to the backdrop payment. "A trial court is not required to apply the percentage guidelines in every case, but it must articulate its reasoning process for the decision to remain within the support guidelines or to deviate from them." *Rumpff v. Rumpff*, 2004 WI App 197, ¶ 14, 276 Wis. 2d 606, 688 N.W.2d 699. The trial court has the discretionary authority to deviate from the percentage standards when it finds that the use of the presumptive child support amount "is unfair to the child or to any of the parties." WIS. STAT. § 767.25(1m). The party seeking a deviation from the established child support standards has the burden of proving that application of the standards in that case is unfair to the party or the child. *See Randall v. Randall*, 2000 WI App 98, ¶ 12, 235 Wis. 2d 1, 612 N.W.2d 737.

¶ 28. The fact that the child will benefit from what numerous parties have termed a "windfall" does not permit the trial court to ignore the percentage standards. There is no "windfall" exception to the application of child support to gross income. Absent a finding of unfairness, grounded in the specific facts of the case, and after considering all fifteen enumerated factors set out in WIS. STAT. § 767.25(1m) and any other factors relevant to the particular case, a trial court is not authorized to deviate from the percentage standards. *See Rumpff*, 276 Wis. 2d 606, ¶ 14; *see also* WIS. STAT. § 767.25(1m). There was no such finding of unfairness in this case.

¶ 29. Winkler also argues that the trial court actually awarded Zablocki what was, in effect, "back support for a period prior to the time that the motion for child support modification had been made . . . ." The trial court correctly refused to award child support retroactively. *See* WIS. STAT. § 767.32(1m) ("[T]he court may not revise the amount of child support . . . due . . . that has accrued, prior to the date that notice of the action is given to the respondent . . . .). Although the trial court heard testimony concerning payments made by Zablocki in the past for both daughters, the trial court properly exercised its discretion when it specifically found:

> that the needs of this child far exceed the reasonable needs, exceed the amount of child support that has been paid during the term of this case, and certainly since Mr. Winkler retired the $142.00 a month goes nowhere near supporting . . . a normal healthy child that's enjoyed a middle[-]class lifestyle which the child[ren] of County workers do get to enjoy.

The factual finding supports the trial court's determination.

### C. Whether the trial court erroneously refused to impose a trust

¶ 30. Winkler also objects to the refusal of the trial court to impose a trust on the portion of the backdrop benefit to be paid as child support. The authority of the court to impose a trust on child support is limited. That authority is found in WIS. STAT. § 767.25(2), which provides: "The court may protect and promote the best interests of the minor children by setting aside a portion of the child support which either

party is ordered to pay in a separate fund or trust for the support, education and welfare of such children."

¶ 31. The imposition of a trust under WIS. STAT. § 767.25(2) is a matter within the trial court's discretion. *See Cameron v. Cameron*, 209 Wis. 2d 88, 98, 562 N.W.2d 126 (1997) ("The circuit court has discretion to determine and adjudge the amount a person should reasonably contribute to the support of his or her child, and shall also determine how that sum should be paid."). "Nonetheless, the custodial parent should not lightly be stripped of [his or] her ability to make decisions concerning rearing [the] child." *Resong v. Vier*, 157 Wis. 2d 382, 391–92, 459 N.W.2d 591 (Ct. App. 1990). Before imposing a trust over the objection of the custodial parent, the trial court must conclude that a trust "is in the best interests of the child." *Cameron*, 209 Wis. 2d at 105. This requires the trial court to find that the primary custodial parent "was incapable or unwilling to wisely manage the child support money." *Id.* at 106.

¶ 32. Here, Winkler failed to establish that Zablocki is "incapable or unwilling" to wisely manage the child support money she will receive from the backdrop payment. *See id.* The trial court did not erroneously exercise its discretion when it declined to impose a trust on the child support award.

*By the Court.*—Orders affirmed.