**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 5, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2021AP523**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020FA11

**IN COURT OF APPEALS
DISTRICT III**

IN RE THE MARRIAGE OF:

MAHMOUD ADEL SHARAF,

  PETITIONER-APPELLANT,

 V.

AMANDA KAY SHARAF,

  RESPONDENT-RESPONDENT.

APPEAL from orders of the circuit court for St. Croix County: SCOTT R. NEEDHAM, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Mahmoud Sharaf appeals from a series of orders that modified his monthly child support obligation.[1]  He contends that the circuit court erroneously exercised its discretion in numerous ways.  We reject each of Mahmoud's arguments and affirm.

## BACKGROUND

¶2     Mahmoud and Amanda were married in December 2013 and have twin sons who were born in May 2015.  Mahmoud petitioned for divorce in November 2016 in Eau Claire County.  The Honorable Michael Schumacher entered a judgment of divorce on December 8, 2017.

¶3     When setting Mahmoud's child support obligation, Judge Schumacher determined that Mahmoud, who was employed as a cardiologist, had an annual income of $625,000.  Amanda was not employed outside the home at the time of divorce.  Judge Schumacher found that Amanda had previously worked as a pharmaceutical sales representative earning $100,000 per year.  Judge Schumacher noted, however, that the parties had agreed Amanda would not work outside the home after their children were born.  Under these circumstances, Judge Schumacher determined that it was appropriate to impute $75,000 in annual income to Amanda, which represented the amount of maintenance to which she was entitled for a five-year period under the parties' prenuptial agreement.

---

[1]  Because Mahmoud and his former spouse, Amanda Sharaf, share a last name, we refer to them by their first names throughout the remainder of this opinion.

¶4 Based on the parties' respective incomes, and applying the twenty-five percent standard set forth in the administrative code, Judge Schumacher determined that Mahmoud was required to pay $7,889 per month in child support, effective January 1, 2018. Judge Schumacher rejected Mahmoud's request to deviate from the percentage standard, concluding that the greater weight of the credible evidence did not support a determination "that use of the 25 percent standard is unfair to the children or to any of the parties."[2] *See* WIS. STAT. § 767.511(1m) (2019-20).[3]

¶5 On October 25, 2019, Amanda filed a motion to modify legal custody, physical placement, and child support. She also moved for a change of venue to St. Croix County. Amanda's motion to change venue was granted. Amanda then refiled her motion to modify legal custody, physical placement, and child support in St. Croix County. On December 15, 2020, Mahmoud moved to dismiss Amanda's motion to modify child support. As relevant to this appeal, Mahmoud argued there had been no substantial change in circumstances that would warrant a modification of child support. In the alternative, if the circuit court determined that modification was appropriate, Mahmoud asked the court to "consider whether a deviation from the [twenty-five percent] standard is appropriate."

---

[2] Mahmoud appealed from the divorce judgment and a postdivorce order, and Amanda cross-appealed. *See* ***Sharaf v. Sharaf***, No. 2018AP735, unpublished slip op. ¶¶1-2 (WI App Sept. 4, 2019). Among other things, Mahmoud argued that Judge Schumacher had erroneously exercised his discretion by failing to deviate from the twenty-five percent standard. ***Id.***, ¶¶42, 44. We rejected that argument and affirmed Judge Schumacher's decision as to child support. ***Id.***, ¶48.

[3] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶6 During a hearing on December 22, 2020, the circuit court denied Mahmoud's motion to dismiss, concluding that a substantial change in circumstances had occurred because more than thirty-three months had elapsed since the entry of the last child support order—i.e., the December 8, 2017 divorce judgment. *See* WIS. STAT. § 767.59(1f)(b)2. In a written order entered the same day, the court then found, based on the divorce judgment, that Amanda had an earning capacity of $100,000 per year. Adding that amount to Amanda's annual maintenance of $75,000, the court determined that Amanda's gross monthly income was $14,583.33.

¶7 The circuit court next found that Mahmoud "had 2018 gross income of $711,607.00 ($613,053 wages and $98,544 investment income)" and "had 2019 gross income of $667,997.00 ($583,015 wages and $84,972 investment income)." The court further found that Mahmoud's "year to date income computed annually would indicate 2020 wage income of $624,500.00." Adding Mahmoud's 2019 investment income to that amount, the court found that Mahmoud's projected gross income for 2020 was $709,472, or $59,122 per month. Given the parties' respective percentages of physical placement, and applying the high-income payer formula, the court ordered Mahmoud to pay $8,886 per month in child support, retroactive to November 1, 2020.

¶8 Amanda sought reconsideration of the circuit court's decision, arguing the court had erred by determining that her annual income included both her yearly maintenance and an earning capacity of $100,000. The court granted Amanda's motion without a hearing in an order dated January 11, 2021. The court explained:

> While Judge Schumacher did find that Ms. Sharaf had earned approximately $100,000.00 as a pharmaceutical

representative, he concluded "that $75,000.00 represents her earning capacity." This figure represented the $75,000.00 that Dr. Sharaf was ordered to pay as maintenance for a period of five years. Judge Schumacher further found that the [parties'] original plan of not having Ms. Sharaf work outside the home and the likelihood that she would not do so until the children are in school or the five years of maintenance ends, was a sufficient basis to conclude that her earning capacity was $75,000.00. No evidence was presented during the hearing before this Court that would negate those findings and conclusions entered by Judge Schumacher on December [8], 2017. Nor has Dr. Sharaf filed any response to [Amanda's motion for reconsideration].

Based on its revised determination as to Amanda's income, the court set Mahmoud's child support obligation at $9,600 per month, retroactive to November 1, 2020.

¶9 On the same day that the circuit court entered its order granting Amanda's motion for reconsideration, Mahmoud filed his own motion for reconsideration of the court's December 22, 2020 decision. In support, Mahmoud submitted his final pay stub for the year 2020, which showed that his gross wages for that year totaled $602,194.47, rather than $624,500, as the court had projected. Mahmoud also argued that the court had erred by including his investment income as part of his gross income when calculating child support. In the alternative, Mahmoud argued that if his investment income was properly included in his gross income, then the court should consider his average investment income over the past five years, rather than using his 2019 investment income. Mahmoud also asserted that the court's determination of his gross income "unfairly inflate[d] his actual income," which justified a deviation from the percentage standard set forth in the administrative code. Mahmoud further argued that the court had correctly attributed $175,000 in annual income to Amanda.

¶10     The circuit court considered and denied Mahmoud's motion for reconsideration during a hearing on February 3, 2021. The court rejected Mahmoud's argument that it had erred by concluding Amanda's annual income was $75,000, rather than $175,000. The court further found that Mahmoud had failed to present any newly discovered evidence that would justify reconsideration of the court's prior decision; he had merely presented "updated" evidence. The court also stated it had appropriately considered a "three-year average" when determining Mahmoud's investment income. The court mentioned, however, that changes in Mahmoud's investment income and the fact that the children had started school—thereby allowing Amanda greater flexibility to work outside the home—could provide grounds for a future motion to modify child support.

¶11     On March 4, 2021, Mahmoud filed a motion to recalculate child support. He asserted the circuit court had used "inaccurate information" when calculating child support because his W-2 for 2020 showed that his actual wages were "considerably lower" than the amount the court had projected. Mahmoud also asserted that the investment income the court had attributed to him did not "accurately reflect the true income from [his] investments." Mahmoud further argued that the court had "double counted" his qualified dividends, which resulted in the court overestimating his income by nearly $20,000.[4]

¶12     The circuit court held a hearing on Mahmoud's motion on April 26, 2021. During the hearing, Eric Winkler, a certified public accountant, testified on

---

[4] Although Mahmoud specifically raised the above issues in his March 4, 2021 motion, he also clarified that he was not conceding either: (1) "the accuracy or legitimacy of the imputed income attributed to Amanda"; or (2) "the inclusion of investment income in the calculation of [his] income for child support purposes."

Mahmoud's behalf. Based on his review of Mahmoud's tax returns, Winkler opined that Mahmoud's total income for the year 2020 was $585,528, rather than the $709,472 previously determined by the court. In particular, Winkler opined that the court had double counted certain dividends when calculating Mahmoud's income. Winkler also testified that Mahmoud had suffered capital losses in the amount of $13,304 in 2020. Winkler further testified, as a general matter, that "[u]sing capital gains and losses to determine one's income … is speculative simply because the market is usually responsible for the capital gains and/or losses one receives." Winkler also testified as to the difference between the Box 1 and Box 5 wages reflected on Mahmoud's 2020 W-2. He explained that Box 1 represents an individual's gross income minus certain tax deductions, such as deductions for retirement account contributions or health insurance, whereas Box 5 (Medicare wages and tips) represents all gross income, including any pre-tax deductions.

¶13 Mahmoud testified that the dividends, capital gains, and capital losses reflected on his tax returns related to investments that he had held for many years, even before the parties were married. He testified the investments were "intended as retirement vehicles" because, as a medical doctor, he did not have a pension. He further testified that the investments were managed by financial advisors and that when particular investments were bought and sold, those transactions did not result in "money that comes into [his] pocket."

¶14 Based on the evidence presented during the April 26, 2021 hearing, Mahmoud argued the circuit court should use the Box 1 wages from his 2020 W-2—$554,870—as his gross income when calculating child support. Using that figure, Mahmoud argued that his monthly child support obligation should be $7,582.83. Mahmoud argued his investment income should not be included in his

gross income because it was "highly speculative and clearly outside of his control."

¶15 Referencing the broad definition of "gross income" set forth in WIS. ADMIN. CODE § DCF 150.02(13) (Dec. 2021),[5] Amanda argued that both Mahmoud's Box 5 wages and his investment income should be included in his gross income for purposes of calculating child support. Amanda acknowledged that investment income fluctuates. She argued, however, that using a three-year average of Mahmoud's investment income would account for that fluctuation. An assistant corporation counsel, representing the county child support agency, agreed with Amanda that the circuit court should use Mahmoud's Box 5 wages when determining his child support obligation. However, "for purposes of ease," counsel requested that the court not include Mahmoud's investment income in his gross income.

¶16 In a written order dated April 28, 2021, the circuit court determined that its prior "finding of 2019 investment income was erroneous and a double counting of capital gains and dividends." The court therefore corrected the amount of child support ordered on December 22, 2020 (which had already been revised by the court's January 11, 2021 order) to $9,385 per month, retroactive to November 1, 2020.

¶17 The circuit court then found, based Mahmoud's 2020 W-2, that his Box 5 wages for 2020 were $593,870. The court refused to exclude Mahmoud's investment income from his gross income, instead concluding that, going forward,

---

[5] All references to WIS. ADMIN. CODE ch. DCF 150 are to the December 2021 register.

it would be "fair and reasonable" to use a "three year rolling average" of Mahmoud's investment income when calculating his gross income. Applying this method, the court concluded that Mahmoud's gross income for 2020 was $653,957. Based on the parties' shared placement of the children, and using the high-income payer formula, the court therefore ordered Mahmoud to pay $8,880 per month in child support, retroactive to March 1, 2021.

¶18 Mahmoud sought clarification of the circuit court's April 28, 2021 order on two grounds. First, he argued that the court should have used his actual 2020 income, rather than his projected income, when revising his child support obligation for November and December 2020. Second, he renewed his objection to the court using his Box 5 wages to determine his gross income.

¶19 The circuit court denied Mahmoud's request for clarification. With respect to Mahmoud's first argument, the court concluded that revising Mahmoud's child support obligation for November and December 2020 based on information first provided to the court in January 2021 "would be reopening the evidence and contrary to determinations made by the Court in subsequent hearings." As for Mahmoud's second argument, the court noted that the assistant corporation counsel had urged the court "to use Box 5 W-2 income as it accurately reflects 'total' wages and not taxable wages." The court stated that conclusion was consistent with Wisconsin law. Mahmoud now appeals.

## DISCUSSION

¶20 A circuit court has discretion to modify a parent's child support obligation after finding that a substantial change in circumstances has occurred. *Winkler v. Winkler*, 2005 WI App 100, ¶23, 282 Wis. 2d 746, 699 N.W.2d 652; *see also* WIS. STAT. § 767.59(1f)(a). In this case, the circuit court determined that

a substantial change in circumstances had occurred based on the passage of time since the entry of the last child support order. *See* § 767.59(1f)(b)2. Mahmoud does not challenge that determination on appeal. The issue is therefore whether the court erroneously exercised its discretion when it modified Mahmoud's child support obligation. A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and uses a demonstrated rational process to reach a reasonable conclusion. *LeMere v. LeMere*, 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789.

## I. Failure to deviate from the percentage standard

¶21    On appeal, Mahmoud's overarching argument is that the circuit court erroneously exercised its discretion by failing to deviate from the percentage standard set forth in the administrative code when setting his child support obligation. Mahmoud asserts the court essentially held "that once it determined that a form of income falls within the code's definition of gross income, it ha[d] no choice but to include it in the payor's gross income under the percentage standards." Mahmoud contends that determination was erroneous, as WIS. STAT. § 767.511(1m) provides that a court may deviate from the percentage standard if, after considering sixteen enumerated factors, the court determines by the greater weight of the credible evidence that use of the percentage standard "is unfair to the child or to any of the parties." In essence, Mahmoud argues the court failed to adequately explain why it decided not to deviate from the percentage standard, in light of the arguments and evidence that Mahmoud presented.

¶22    In response, Amanda notes that WIS. STAT. § 767.511(1m) requires a circuit court to make a determination as to whether a deviation from the percentage standard would be unfair to the child or to any of the parties only when

a party has made a "request" for a deviation. Amanda contends that in this case, Mahmoud "did not at any point request the [circuit] court to deviate from the child support guidelines." Amanda asserts that Mahmoud's arguments in the circuit court were instead focused on how the court should calculate his gross income for purposes of determining his child support obligation. Under these circumstances, Amanda contends the court was not required to provide any explanation for its decision to adhere to the percentage standard. *See also* WIS. STAT. § 767.511(1n) (requiring a court to explain its reasoning either in writing or on the record if the court decides to *deviate* from the percentage standard based on the factors set forth in § 767.511(1m)).

¶23 Mahmoud responds that he did, in fact, ask the circuit court to deviate from the percentage standard in his December 15, 2020 motion to dismiss. During a subsequent hearing on December 22, 2020, however, Mahmoud's attorney noted that Judge Schumacher had applied the twenty-five percent standard. Mahmoud's attorney then stated, "Arguably, … there should be no deviation from [the] 25 percent standard unless the Court believes that that would be appropriate." However, Mahmoud later argued in his brief in support of his motion for reconsideration that the court's prior determination of his gross income "unfairly inflate[d] his actual income," which justified a deviation from the percentage standard.

¶24 "A litigant must raise an issue with sufficient prominence such that the [circuit] court understands that it is being called upon to make a ruling." *Bishop v. City of Burlington*, 2001 WI App 154, ¶8, 246 Wis. 2d 879, 631 N.W.2d 656. Here, assuming without deciding that Mahmoud sufficiently raised the issue of whether the court should deviate from the percentage standard, we agree with Amanda that Mahmoud has not shown that the court erroneously

exercised its discretion by failing to do so. Mahmoud essentially argues on appeal that the court should have deviated from the percentage standard by declining to include certain items in his gross income for purposes of calculating child support. He also contends that the court failed to adequately address whether its child support award was fair to the parties. Finally, Mahmoud asserts that the court erred by adhering to Judge Schumacher's prior determination that Amanda had an earning capacity of $75,000 per year. We reject each of these arguments, for the reasons explained below.[6]

## II. Investment income

¶25    Mahmoud first argues that the circuit court erred because it "failed to appropriately account for the fluctuating nature of the investment income in this case." Mahmoud notes that he received dividends totaling $29,798 in 2018, $22,926 in 2019, and $39,848 in 2020. He further observes that his capital gains were $48,184 in 2018 and $44,154 in 2019, but he sustained capital losses of $13,304 in 2020. Given these "volatile fluctuations," Mahmoud contends it is fundamentally unfair to include his investment income in his gross income for purposes of calculating child support. He further asserts that because of these fluctuations, including his investment income in his gross income for purposes of calculating child support will require the parties to continuously return to court to relitigate the issue of child support, which will unnecessarily "breed disputes

---

[6] Mahmoud asserts that the circuit court failed to adequately explain why it denied his requests to deviate from the percentage standard. He contends that failure, in and of itself, provides a basis for us to reverse the court's orders. "Although the proper exercise of discretion contemplates that the circuit court explain its reasoning, when the court does not do so, we may search the record to determine if it supports the court's discretionary decision." *Randall v. Randall*, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737. Here, as explained below, the record supports the court's discretionary determinations regarding child support.

between the parents, incur litigation fees, and expend judicial resources." For these reasons, Mahmoud asserts that the court should have exercised its discretion to exclude his investment income from the child support calculation.

¶26 We disagree. First, we note that Mahmoud's argument that the circuit court should have simply ignored his investment income is contrary to WIS. ADMIN. CODE § DCF 150.02(13)(a)2., which expressly states that a parent's "gross income" for purposes of calculating child support includes "[i]nterest and investment income." Second, in its April 28, 2021 order, the court expressly found that it was "fair and reasonable" to use a three-year average of Mahmoud's "interest, dividend[s], and capital gains/losses" when calculating his gross income, "given the fluctuations in the market and investment strategies." The court reasoned that using a three-year average would provide a "more accurate reflection of [Mahmoud's] investment income" than simply using the investment income he had earned during the previous year. Mahmoud has not shown that the court's decision to consider a three-year average of his investment income did not appropriately account for the fluctuating nature of that income and was an erroneous exercise of discretion.

¶27 Moreover, while Mahmoud argues that the circuit court's decision to include his investment income in his gross income was unfair to the parties, the court could reasonably determine that simply ignoring Mahmoud's investment income would be unfair to Amanda and the children because it would exclude a significant source of income that would have otherwise been available for the children's support. Furthermore, as Amanda correctly notes, WIS. STAT. § 767.59(1f)(b)2. creates a rebuttable presumption that "the expiration of 33 months after the date of the entry of the last child support order" constitutes a substantial change in circumstances sufficient to justify a modification of child

13

support. Consequently, every thirty-three months, either party will be permitted to seek a modification of Mahmoud's child support obligation based on fluctuations in his investment income. Under these circumstances, we reject Mahmoud's argument that the court erroneously exercised its discretion because its treatment of his investment income was unfair to the parties.

## III. Capital gains

¶28 Mahmoud next argues that the capital gains at issue in this case are not "income" for purposes of calculating child support. He contends, as a general matter, that capital gains represent "the appreciation or loss of value of an asset, not a payout plan nor an income stream." As such, Mahmoud asserts that capital gains do not fall within the term "investment income" in WIS. ADMIN. CODE § 150.02(13)(a)2. Consequently, he contends the circuit court erred when it included his capital gains in his gross income for purposes of calculating child support.

¶29 Mahmoud fails to acknowledge, however, that in addition to including nine specifically enumerated categories of income—including "[i]nterest and investment income," *see* WIS. ADMIN. CODE § DCF 150.02(13)(a)2.—the term "gross income" also includes "[a]ll other income, whether taxable or not," subject to certain exceptions not applicable here. WIS. ADMIN. CODE § DCF 150.02(13)(a)10. In addition, Mahmoud concedes that this court has previously held that a circuit court has discretion to treat the capital gain realized from the sale of an asset awarded to one party in the property division as that party's income for purposes of calculating child support. *See **Maley v. Maley***, 186 Wis. 2d 125, 128, 519 N.W.2d 717 (Ct. App. 1994); *see also **Cook v. Cook***, 208 Wis. 2d 166, 182, 560 N.W.2d 246 (1997). This court has also stated that "if an

14

income is reported as income for income tax purposes, that income is deemed derived and realized whether it has been distributed or not." ***Stevenson v. Stevenson***, 2009 WI App 29, ¶27, 316 Wis. 2d 442, 765 N.W.2d 811. Based on these authorities, we reject Mahmoud's argument that the circuit court could not, as a matter of law, treat his capital gains as part of his gross income when calculating child support.

¶30 In the alternative, Mahmoud argues that even if capital gains may be treated as income for purposes of calculating child support, the circuit court erroneously exercised its discretion by doing so here. In support of this argument, Mahmoud again cites the fluctuating nature of his capital gains and losses. He further asserts that because the children already have "ample support," the capital gains "would not normally be available for the support of the children" but would instead "be reinvested for [his] retirement." He also argues that his investments are "not subject to [his] control" because he does not actively manage or make decisions regarding them. Instead, he contends the investments are controlled by fund managers who make decisions "based on a variety of factors that do not have to do with funds available to pay support."[7]

¶31 We reject these arguments and conclude the circuit court did not erroneously exercise its discretion by treating Mahmoud's capital gains as income when calculating child support. As discussed above, the court appropriately accounted for the fluctuating nature of the capital gains by using a three-year

---

[7] In a separate section of his brief-in-chief, Mahmoud argues that because of his inability to "control or access" his investments, the circuit court also erred by treating the dividends from those investments as income for purposes of calculating child support. We reject that argument, for the same reasons we conclude below that Mahmoud's alleged lack of control over the investments did not preclude the court from treating his capital gains as income.

average of Mahmoud's capital gains and losses when determining his gross income. And, while Mahmoud asserts that the children had "ample support" from other sources, the court could reasonably conclude that failing to treat the capital gains as income would be unfair to Amanda and the children, as it would artificially exclude a portion of Mahmoud's income that could otherwise be used for the children's support.

¶32    Furthermore, although Mahmoud contends that his capital gains should not be treated as income because they are "reinvested for [his] retirement," he cites no legal authority in support of the proposition that a parent may reduce his or her child support obligation by reinvesting for retirement funds that would otherwise be treated as income for purposes of calculating child support.[8]   In addition, we reject Mahmoud's argument that the capital gains should not be treated as income because he does not have "control" over his investments. Although a fund manager may make the necessary day-to-day decisions regarding Mahmoud's investments, Mahmoud does not dispute Amanda's assertion that the investments "are Mahmoud's personal investment assets over which he has control to direct a fund manager or to manage them on his own." Mahmoud cites no legal authority supporting his claim that the capital gains should not be treated as income simply because he chooses not to personally manage his investments. We therefore reject Mahmoud's argument that, under the specific factual circumstances of this case, the circuit court erroneously exercised its discretion by treating his capital gains as income for purposes of child support.

---

[8] To the contrary, WIS. ADMIN. CODE § DCF 150.02(13)(a)7. expressly states that the term "gross income" includes "[v]oluntary deferred compensation, employee contributions to any employee benefit plan or profit-sharing, and employee contributions to any pension or retirement account whether or not the account provides for tax deferral or avoidance."

**IV. W-2 Box 5 wages**

¶33     Mahmoud also contends that the circuit court erred by using his W-2 Box 5 wages when determining his gross income, rather than his Box 1 wages. He asserts that the court failed to provide any explanation for its decision to use the Box 5 wages. He further contends that the court did not address his argument that it was inappropriate to use the Box 5 wages because they "included mandatory contribution[s] to health insurance for the children and also included contributions to his 401k in the form of 50% matching contributions from his employer." He argues that in this case, where the children "are already amply supported, including or adding back in that 'extra' money which Congress wants to incentivize people to earmark for certain purposes as part of the child support award is not necessary."

¶34     We conclude the circuit court did not erroneously exercise its discretion by using Mahmoud's Box 5 wages when determining his gross income. We agree with Amanda that although Mahmoud "may elect to take advantage of the government's decision to incentivize health and retirement savings, … this does not diminish his gross income for the purposes of child support." Furthermore, as noted above, the administrative code expressly provides that a parent's "gross income" includes voluntary deferred compensation, employee contributions to employee benefit plans or profit-sharing, and employee contributions to pensions or retirement accounts. WIS. ADMIN. CODE § DCF 150.02(13)(a)7. While Mahmoud asserts that his Box 5 wages include employer contributions to his 401k, he does not develop any argument or cite any legal authority in support of the proposition that such contributions cannot be treated as income for purposes of calculating child support. On this record, the court could

17

reasonably conclude that it was appropriate to use Mahmoud's Box 5 wages, rather than his more limited Box 1 wages, when determining his gross income.

## V. Fairness

¶35    Mahmoud next argues that the circuit court erroneously exercised its discretion by "not addressing the arguments raised as to overall fairness, including issues of hidden maintenance, and increased child support without any increased showing of need." He further asserts that the court "strung together the numbers resulting in the highest award Mahmoud would have to pay, without explaining how or why it was fair to do so under the specific facts and circumstances of this particular case." Mahmoud specifically contends that it was unfair for the court to increase his child support obligation given that: (1) the only change in circumstances was the passage of time; (2) there was no evidence that the children's need for support had increased; and (3) the evidence showed that since the divorce judgment was entered, Mahmoud's wages had decreased from $625,000 to $593,869.79.

¶36    Wisconsin courts apply a presumption that child support established pursuant to the percentage standards in WIS. ADMIN. CODE ch. DCF 150 is fair. *See **Ladwig v. Ladwig**,* 2010 WI App 78, ¶23, 325 Wis. 2d 497, 785 N.W.2d 664. In this case, the circuit court could reasonably determine that Mahmoud had failed to rebut that presumption. More specifically, the court could reasonably determine that it was not unfair for Mahmoud—whose gross income for the year 2020 totaled $653,957—to pay $8,880 per month to support his two children, who spent seventy-percent of their time with Amanda. This was an increase of $991 per month over Mahmoud's original child support obligation, as set forth in the divorce judgment. Despite Mahmoud's decreased wages from years prior, the

court could reasonably conclude that such an increase was fair because the original child support award did not take into account Mahmoud's investment income.

## VI. Projected earnings

¶37 Mahmoud next argues that, with respect to the child support award that was effective on November 1, 2020, the circuit court erred by using Mahmoud's projected wages for the year 2020, rather than the actual wages reflected on his 2020 W-2. In its December 22, 2020 decision on Amanda's motion to modify child support, the court determined that Mahmoud's "year to date income computed annually would indicate 2020 wage income of $624,500.00." Using that number, the court ordered Mahmoud to pay $8,886 per month in child support, retroactive to November 1, 2020.

¶38 As discussed above, on January 11, 2021, Mahmoud moved for reconsideration of the circuit court's December 22, 2020 decision. In support of his motion, Mahmoud submitted his final pay stub for the year 2020, which showed that he had earned only $602,194.47 in wages that year, rather than the $624,500 projected by the circuit court. The court denied Mahmoud's motion for reconsideration, concluding he had failed to present any newly discovered evidence that would justify reconsideration of the court's prior decision. Instead, the court concluded Mahmoud had merely presented "updated" evidence that could justify a future modification of child support.

¶39 We review a circuit court's denial of a motion for reconsideration for an erroneous exercise of discretion. *Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶6, 275 Wis. 2d 397, 685 N.W.2d 853. "To prevail on a motion for reconsideration, the movant must present either newly discovered evidence or establish a manifest error of law

or fact." *Id.*, ¶44. On appeal, Mahmoud does not develop any argument in his brief-in-chief that the court erred by concluding he had failed to present newly discovered evidence in support of his motion for reconsideration.[9] Nor does Mahmoud argue that the court's use of his projected wages in its December 22, 2020 decision was a manifest error of law or fact. As such, Mahmoud has failed to show that the court erroneously exercised its discretion by denying his motion for reconsideration.

¶40 Mahmoud instead argues that the circuit court erred when it denied his subsequent request to modify the child support award effective on November 1, 2020, based on the discrepancy between his projected and actual 2020 wages. Mahmoud notes that in its April 28, 2021 order, the court found that it had improperly double counted certain amounts when calculating his investment income. Mahmoud asserts the court therefore "retroactively corrected" his investment income for 2020, but it nevertheless continued to use his projected 2020 wages, rather than his actual wages. Mahmoud argues it was an erroneous exercise of discretion for the court "to only correct one aspect of the December 22 award (i.e., the double counting) but not explain why [the court] was not also correcting the earnings or why it was appropriate … to still be using 'projected' income."

---

[9] In his reply brief, Mahmoud argues for the first time that when the circuit court denied his motion for reconsideration, the court "erroneously maintained [that] the actual and updated earnings information … was not newly discovered evidence for purposes of a reconsideration motion." We need not address arguments raised for the first time in a reply brief. *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998). Moreover, while Mahmoud asserts the court erroneously concluded that the updated wage information was not newly discovered evidence, he does not develop any argument in support of that assertion. We need not address undeveloped arguments. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶41    Mahmoud is correct that the circuit court's April 28, 2021 order did not specifically address why the court chose to use his projected 2020 wages, rather than his actual wages, when correcting the child support award that was effective as of November 1, 2020.  However, in its subsequent decision denying Mahmoud's request for clarification of the April 28, 2021 order, the court rejected Mahmoud's argument that it should have revised his child support obligation for November and December 2020 to account for his actual 2020 wages.  The court reasoned that revising Mahmoud's prior child support obligation based on new facts that were first provided to the court in January 2021 "would be reopening the evidence and contrary to determinations made by the Court in subsequent hearings."

¶42    Mahmoud does not address the circuit court's conclusion in this regard.  An appellant's failure to address the grounds on which the circuit court ruled constitutes a concession of the ruling's validity.  *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994).  Under these circumstances, we reject Mahmoud's contention that the court erroneously exercised its discretion by failing to modify his prior child support obligation to account for the new information he provided regarding his actual 2020 wages.

## VII.  Amanda's earning capacity

¶43    Finally, Mahmoud argues that the circuit court erred by adhering to Judge Schumacher's use of $75,000 for Amanda's earning capacity.  As discussed above, the court initially determined that for purposes of calculating child support, Amanda's income was $175,000 per year—the sum of the yearly maintenance she received from Mahmoud ($75,000) and the annual income she had earned before the children were born ($100,000).  The court subsequently granted Amanda's

21

motion for reconsideration, however, and recalculated child support using Amanda's earning capacity of $75,000, as previously determined by Judge Schumacher. The court continued to use Amanda's earning capacity of $75,000 in its April 28, 2021 order modifying child support.

¶44 Mahmoud argues that the circuit court's continued use of $75,000 as Amanda's earning capacity was inconsistent with the court's treatment of Mahmoud's investment income. Mahmoud emphasizes that while the court adhered to Judge Schumacher's determination of Amanda's earning capacity, the court deviated from Judge Schumacher's decision by determining that Mahmoud's gross income included both his wages and his investment income. Mahmoud asserts that "[i]f Judge Schumacher's determinations were the touchstone for the child support calculation," then the court should have adhered to Judge Schumacher's decision that Mahmoud's gross income included only his wages. Mahmoud therefore contends that the court erroneously exercised its discretion by failing to explain why it adopted Judge Schumacher's determination regarding Amanda's earning capacity but deviated from Judge Schumacher's treatment of Mahmoud's investment income.

¶45 As Amanda correctly notes, the circuit court was not required to follow Judge Schumacher's methodology from the 2017 divorce judgment when recalculating Mahmoud's child support obligation in 2021. The court adequately explained in its January 11, 2021 order why it believed it was appropriate to adopt Judge Schumacher's determination regarding Amanda's earning capacity. However, the court's decision to adopt one aspect of Judge Schumacher's decision did not obligate the court to adopt any of Judge Schumacher's other determinations. Moreover, as Amanda aptly observes, Mahmoud has not cited any evidence that Judge Schumacher was aware of Mahmoud's investment income and

made an intentional decision to exclude it from Mahmoud's gross income when calculating child support.

¶46 In any event, based on the parties' arguments and the evidence presented during the April 26, 2021 hearing, the circuit court could reasonably exercise its discretion to depart from Judge Schumacher's prior decision by including Mahmoud's investment income in his gross income. As explained above, the court's decision to include Mahmoud's investment income in his gross income was not an erroneous exercise of discretion. Under these circumstances, we reject Mahmoud's argument that the court's allegedly "inconsistent" treatment of his investment income and Amanda's earning capacity provides a basis to reverse the court's orders.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.